UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

CARL GOODLOE,

                                    Plaintiff,

                    -against-

THE CITY OF NEW YORK, JOHN DOE
UNDERCOVER POLICE OFFICER #2570,
DETECTIVE COOK, DETECTIVE DAUGE,
SARGEANT   RAMIREZ,   POLICE   OFFICER
FRANK CHIODI, AND JOHN DOE POLICE
OFFICERS 1-5 of the NEW YORK CITY POLICE
DEPARTMENT,

                                    Defendants.

------------------------------------------------------------- x

**DEFENDANTS'
STATEMENT OF
MATERIAL FACTS
PURSUANT TO
LOCAL CIVIL
RULE 56.1**

12 CV 3018 (AMD) (VMS)

Defendants City of New York, Undercover Police Officer #2570, Detective

Christopher Cooke, Detective Vincent Dauge, Sergeant Claudio Ramirez, and Sergeant Frank

Chiodi submit this statement pursuant to Local Civil Rule 56.1 of the Local Rules of the United

States District Courts for the Southern and Eastern Districts of New York to set forth the material

facts as to which Defendants contend there are no genuine issues to be tried.

        1.      Plaintiff Carl Goodloe filed a Complaint in the United States District

Court, Eastern District of New York, on June 15, 2012, and an Amended Complaint on June 3,

2013 (hereinafter referred to collectively as the "Complaint") alleging, *inter alia*, that he was

falsely arrested on April 25, 2007, and was subsequently maliciously prosecuted, in retaliation

for a settlement payment he received in connection with a prior lawsuit he filed against the City

of New York.  See Complaint and Amended Complaint, annexed to the Declaration of Erica M.

Haber in Support of Defendants' Motion for Summary Judgment, dated July 15, 2016

(hereinafter referred to as the "Haber Decl."), as "Exhibit A" and "Exhibit B," respectively.

2.      Defendants City, Cooke, Dauge, Ramirez and Chiodi filed an Answer to the original Complaint on September 18, 2012, and defendants City, Undercover Officer #2570, Cooke, Dauge, Ramirez and Chiodi filed an Answer to the Amended Complaint on July 10, 2013.  See Defendants' Answers, annexed collectively to the Haber Decl. as "Exhibit C."

3.      In the Amended Complaint, plaintiff alleges that he was arrested on April 27, 2007, however, the actual date of arrest was April 25, 2007.  See Omniform Arrest Report, pertaining to plaintiff's arrest on April 25, 2007, annexed to the Haber Decl. as "Exhibit R."

4.      Plaintiff was arrested on or about April 25, 2007, in connection with an approximately 19-month-long investigation conducted by the New York City Police Department ("NYPD") and the Office of the District Attorney, Kings County ("KCDA"), into a conspiracy to sell narcotics in and around the Cypress Hills Houses, a public housing complex located in the East New York section of Brooklyn.  See Omniform Arrest Report pertaining to plaintiff's April 25, 2007 arrest, annexed to the Haber Decl. as "Exhibit R."   See also, Transcript of Deposition of non-party Assistant District Attorney ("ADA") Gloria Rios, taken on July 23, 2014 (hereinafter "Rios Dep."), at 9:13-11:19, annexed to the Haber Decl. as "Exhibit K."  See also, Transcript of Grand Jury Testimony of Detective Christopher Cooke, taken on October 22, 2007, pertaining to Indictment No. 10116/07 (hereinafter "Cooke GJ Tr."), annexed to the Haber Decl. as "Exhibit H," at 26:4-30:25.

5.      The long-term investigation was called "Lightning Strikes Twice."  See Rios Dep., Exhibit K to Haber Decl., at 9:13-23.  See also, Transcript of Deposition of Detective Christopher Cooke, taken on July 31, 2014 (hereinafter "Cooke Dep."), annexed to the Haber Decl. as "Exhibit G," at 10:17-25-11:9.

6.      Defendant Detective Christopher Cooke (hereinafter "Detective Cooke"), who was then assigned to the NYPD's Narcotics Borough Brooklyn North Command, was assigned by his supervisor to be the lead investigator for Lightning Strikes Twice in or around September 2005.  See Cooke Dep., Exhibit G to the Haber Decl., at 7:12-25, 10:17-12: 4.

7.      Defendant Undercover Officer #2570 (hereinafter "U/C #2570") worked in an undercover capacity in the Lightning Strikes Twice investigation between approximately September 2005 and April 2007.  See Transcript of Deposition of Steven P. LaFortune, taken on July 18, 2014 (hereinafter "U/C Dep."), annexed to the Haber Decl. as "Exhibit E," at 19:22-20:8.

8.      Defendant Detective Vincent Dauge (hereinafter "Detective Dauge") was the "co-caseworker," or alternate case detective, assigned to the Lightning Strikes Twice investigation.  Transcript of Grand Jury Testimony of Detective Vincent Dauge, taken on November 16, 2007, pertaining to Indictment No. 10116/07 (hereinafter "Dauge GJ Tr."), annexed to the Haber Decl. as "Exhibit I," at 10-11.  See also, Cooke Dep., "Exhibit G" to the Haber Declaration, at 102:15-103: 14.

9.      Defendant Sergeant Claudio Ramirez was one of Detective Cooke's supervisors during the Lightning Strikes Twice investigation.  Cooke Dep., Exhibit G to the Haber Decl., at 141:6-17.

10.     Defendant then-Police Officer Frank Chiodi was assigned as the Arresting Officer for plaintiff's arrest on April 25, 2007.  See Omniform Arrest Report pertaining to plaintiff's arrest on April 25, 2007, Exhibit R to the Haber Decl..  See also, Relevant Excerpt of Memobook of then-Police Officer Frank Chiodi, dated April 25, 2007, annexed to the Haber

Decl. as "Exhibit S;" Transcript of Grand Jury Testimony of then-Police Officer Frank Chiodi, taken on October 31, 2007, annexed to the Haber Decl. as "Exhibit J," at pp. 35:3-36:12.

11.     Non-party ADA Gloria Rios, an employee of the KCDA, was assigned to work on the Lightning Strikes Twice investigation, along with several other ADAs, sometime prior to October 2005.  See Rios Dep., Exhibit K to the Haber Decl., at 5:12-25; 9:13-10:7; 11:25-13:13.

12.     The purpose of a long-term narcotics-related investigation is to try to identify who the "players" are in certain areas.  Cooke Dep., Exhibit G to the Haber Decl., at 15:20-16:12.  See also, Cooke GJ Tr., Exhibit H to the Haber Decl., at 16:20-18:13.

13.     On or about January 25, 2006, at approximately 6:30 p.m., in connection with Lightning Strikes Twice, U/C #2570 bought crack cocaine from an individual then-identified as "JD Hood" inside of 305 Fountain Avenue, Apartment 7A, an apartment located within Cypress Hills Houses and occupied by Larry Bozeman (then-identified as "JD Brown Jacket"), who was a subject of the Lightning Strikes Twice investigation.[1]  See U/C Dep., Exhibit E to the Haber Decl., at 75:9-77:6; 85:5-99:17; 104:19-111:24.  See also, Transcript of Grand Jury Testimony of U/C #2570, taken on October 23, 2007, pertaining to Indictment No. 10116/07 (hereinafter "U/C GJ Tr."),[2] annexed to the Haber Decl. as "Exhibit F," at 25:7-27:8. See also, O.C.C.B. Buy Report dated January 25, 2006 and Police Laboratory Controlled Substance Analysis Report, dated August 28, 2006, annexed collectively to the Haber Decl. as

---

[1] Upon information and belief, Larry Bozeman is deceased.

[2] During the underlying criminal matter, in an effort to protect the identity of undercover officers, the Kings County District Attorney's Office redacted undercover numbers from all documents turned over to criminal defense counsel, and replaced them with different numbers. U/C #2570 was designated as "Undercover Officer 3."  See Rios Dep., Exhibit K to the Haber Decl., at 33:5-34:24.

- 4 -

Exhibit "L."  See also, Cooke Dep., Exhibit G to the Haber Decl., at 111:20–113:7; Follow-up

Informational ("DD5") dated January 25, 2006, annexed to the Haber Decl. as "Exhibit L."

14.     On or about November 30, 2006, as part of the Lightning Strikes Twice

investigation, U/C #2570 went back to JD Brown Jacket's apartment at 305 Fountain Avenue to

purchase narcotics.  JD Brown Jacket told U/C #2570, in sum and substance, that they would

have to go to see another individual then-identified as "JD Ace" at 345 Fountain Avenue, another

building located within Cypress Houses, to do so.[3]  See O.C.C.B. Buy Report dated November

30, 2006 (hereinafter "U/C Buy Report dated 11/30/06"), annexed to the Haber Decl. as "Exhibit

M."  See also U/C Dep., Exhibit E to the Haber Decl., at 147:20–148:18.

15.     On November 30, 2006, U/C #2570 walked with JD Brown Jacket to 345

Fountain Avenue.  See U/C Buy Report dated 11/30/06, Exhibit M to the Haber Decl.  See also

U/C Dep., Exhibit E to the Haber Decl., at 148:19-21.

16.     On their way to 345 Fountain Avenue, U/C #2570 saw JD Hood on Blake

Avenue.  See U/C Buy Report dated 11/30/06, Exhibit M to the Haber Decl..  See also U/C Dep.,

Exhibit E to the Haber Decl., at 101:2-18; 149:4-8; 153:11-22.    See also, U/C GJ Tr. dated

October 24, 2007, Exhibit F to the Haber Decl., at 26:19-28:14.

17.     U/C #2570 recognized the individual as JD Hood right away.  See U/C

Dep., Exhibit E to the Haber Decl., at 153:11-22.

---

[3] Defendants submit that the statements referred to here, and in paragraphs 18, 22, 49-51, and 54,
are not inadmissible hearsay because they are not being offered for the truth of the matter
asserted, but rather to establish U/C #2570's state of mind.  See United States v. Puzzo, 928 F.2d
1356, 1365 (2d Cir. 1991) (noting that evidence offered to show the effects of statements on a
listener, or as proof of the defendant's state of mind, are not hearsay); Marin v. City of New
York, 04 CV 3194, 2006 U.S. Dist. LEXIS 53048, *18 (E.D.N.Y. Aug. 1, 2006)  ("because the
statements are offered to show the information Detective Lynch had when he arrested Marin,
they are not inadmissible hearsay").

18.     JD Brown Jacket asked JD Hood if he had "weight," and JD Hood responded that another subject of the investigation then-identified as "JD Big" "deals with the weight," but that he "could get [U/C #2570 and JD Brown Jacket] some dimes if [they] wanted." See U/C Buy Report dated 11/30/06, Exhibit M to the Haber Decl.  See also U/C Dep., Exhibit E to the Haber Decl., at 149:13-150:8; 153:25-155:8; U/C GJ Tr. dated October 24, 2007, Exhibit F to the Haber Decl., at 26:19-28:14.

19.     On November 30, 2006, Detective Cooke observed U/C #2570 walking southbound on Franklin Avenue with Larry Bozeman (aka, JD Brown Jacket) at or around 1:15 p.m.   See Follow-up Informational dated November 30, 2006 (hereinafter "DD5 dated 11/30/06"), annexed to the Haber Decl., as "Exhibit M."  See also Cooke Dep., Exhibit G to the Haber Decl., at 39:2-21.   See also, U/C Dep., Exhibit E to the Haber Decl., at 147:20-149:22; U/C GJ Tr. dated October 24, 2007, Exhibit F to the Haber Decl., at 26:19–28:14.

20.     Detective Cooke then observed U/C #2570 and Larry Bozeman walk to Blake Avenue and proceed westbound toward Logan Street.  Id.

21.     As U/C #2570 and Larry Bozeman got to the corner of Blake and Logan, Detective Cooke observed them engaged in a conversation with a black male with braids in his hair, an individual whom Detective Cooke recognized from prior encounters as "Carl Goodloe." See Cooke Dep., Exhibit G to the Haber Decl., at 17:19–20:19; 31:24–32:15; 34:5-10; 39:22-24. See also, DD5 dated 11/30/06, Exhibit M to the Haber Decl.  See also, Transcript of Deposition of Plaintiff Carl Goodloe, taken on July 17, 2014 (hereinafter "Pl. Dep.)," annexed to the Haber Decl. as "Exhibit D," at 13:16–17:10.

22.     At approximately 1:30 p.m. on November 30, 2006, U/C #2570 contacted Detective Cooke from the street and informed him that "Carl Goodloe" was JD Hood, the

individual from whom he had previously bought crack cocaine.  See Cooke Dep., Exhibit G to the Haber Decl., at 40:17–41:14.  See also U/C Dep., Exhibit E to the Haber Decl., at 150:22–151:5; 155:9-18. See also DD5 dated 11/30/06 and U/C Buy Report dated 11/30/06, Exhibit M to the Haber Decl.

  23. On or about December 5, 2006, Detective Cooke presented a photo array to U/C #2570.  See Photographic Lineup and Follow-up Informational dated December 5, 2006, annexed collectively to the Haber Decl. as "Exhibit N."  See also, Cooke Dep., Exhibit G to the Haber Decl., at 105:18-21; 106:20–107:24; 130:20–132:23.  See also, U/C Dep., Exhibit E to the Haber Decl., at 158:5-17; 160:25-164:6.

  24. U/C #2570 positively identified photo #6 – which was a photo of plaintiff – as "JD Hood."  See Photographic Lineup, Exhibit N to the Haber Decl.  See also, U/C Dep., Exhibit E to the Haber Decl., 160:25–161:19; 163:22–164:6.  See also, Cooke Dep., Exhibit G to the Haber Decl., at 105:18-21; 130:20-24; 132:7–133:10.

  25. The photo of plaintiff used in the December 5, 2006 photo array was taken in connection with plaintiff's arrest on July 22, 2006, not his arrest on September 2, 2005.  See NYPD Photo Array, annexed to the Haber Decl. as "Exhibit N."

  26. On February 26, 2007, plaintiff was arrested on the southwest corner of Doscher Street and Sutter Avenue, in the confines of the 75th Precinct, on the charge of operating a motor vehicle without insurance, among others.  See Omniform Arrest Report, Prisoner Movement Slip, and New York City Criminal Justice Agency Interview Report, pertaining to plaintiff's arrest as "Abdul Evans" on February 26, 2007, annexed collectively to the Haber Decl. as "Exhibit O."  See also, Omniform Arrest History List, and Rap Sheet, pertaining to NYSID: 09767586K, annexed collectively to the Haber Decl. as "Exhibit Q."

27.     In connection with his arrest on February 26, 2007, plaintiff used the alias "Abdul Evans," and also lied about his date of birth, and provided two different home addresses (i.e. 54-41 Alameda Avenue and 54-49 Alameda Avenue), but he provided his mother's name (Jacqueline Ayende) as a contact person. See id. See also, Pl. Dep., Exhibit D to the Haber Decl., at 3:6-10; 17:15-18:8; 20:9-12.

28.     When plaintiff was arrested on February 26, 2007, he was driving a 2003 Chevy Impala, Vehicle Identification Number 2G1WF52E839251964, which was seized and vouchered.  See Vehicle Seizure Form and Relevant Excerpt of Memobook of Police Officer John Hallock, pertaining to plaintiff's arrest on February 26, 2007, annexed collectively to the Haber Decl. as "Exhibit O."

29.     On February 27, 2007, Detectives Cooke and Dauge and Sergeant Ramirez were conducting surveillance for the Lightning Strikes Twice investigation.  See Cooke Dep., Exhibit G to the Haber Decl., at 89:14–90:6.  See also, Follow-up Informational dated February 27, 2007 (hereinafter "Cooke DD5 dated 2/27/07"), annexed to the Haber Decl. as "Exhibit P."

30.     At approximately 7:30 p.m. on February 27, 2007, Detective Cooke observed plaintiff at the corner of Euclid and Sutter Avenues, in the area of the Cypress Hills Houses, and stopped him to conduct an identification procedure.  Cooke Dep., Exhibit G to the Haber Decl., at 87:20–88:17.  See also Cooke DD5 dated 2/27/07, Exhibit P to the Haber Decl.

31.     Detective Cooke recognized plaintiff as Carl Goodloe prior to stopping him.  See Cooke Dep., Exhibit G to the Haber Decl., 88:12-14; 90:11-19; 92:23-93:2-7; 169:10-20. See also Cooke DD5 dated 2/27/07, Exhibit P to the Haber Decl.

32.    On February 27, 2007, U/C #2570 observed plaintiff in the company of Detective Cooke on the corner of Euclid and Sutter, and positively identified plaintiff as "JD Hood" to Detective Cooke.  See Cooke Dep., Exhibit G to the Haber Decl., at 88:9-17.  See also U/C Dep., Exhibit E to the Haber Decl., at 158:5-14; 176:20-23; 182:15-20.  See also Cooke DD5 dated 2/27/07, Exhibit P to the Haber Decl.; Follow-up Informational dated February 27, 2007 (hereinafter "U/C DD5 dated 2/27/07"), annexed to the Haber Decl. as "Exhibit P."

33.    During the February 27, 2007 stop, plaintiff identified himself as "Abdul Evans," claimed not to have identification, and, as proof of his identity, showed Detective Cooke an NYPD Property Voucher receipt that was given to him following his arrest the day before on unrelated charges.  See Cooke Dep., Exhibit G to the Haber Decl., at 92:4–93:3-7.  See also, Cooke DD5 dated 2/27/07, and NYPD Stop, Question and Frisk Report Worksheet ("UF250") dated February 27, 2007, annexed collectively to the Haber Decl. as Exhibit "P."  See also, Vehicle Seizure Form, pertaining to the arrest of "Abdul Evans" on February 26, 2007, annexed to the Haber Decl. as "Exhibit O."

34.    Plaintiff also provided Detective Cooke with a December date of birth as opposed to his actual October birthdate, and gave his address as 54-41 Almeida Avenue, in Queens.  See Cooke DD5 dated 2/27/07 and UF250 dated 2/27/07, Ex. P to Haber Decl.  See also Rap Sheet pertaining to plaintiff, Exhibit Q to the Haber Decl..

35.    Plaintiff's actual address is 54-49 Alameda Avenue, Apartment 3B, Queens, New York, and he has lived at that address "for [his] whole life."  Pl. Dep., Exhibit D to the Haber Decl., at 3:6-10; 17:16-24.

36.    On or about February 27, 2007, Detective Cooke checked the NYSID number for "Abdul Evans." See Cooke Dep., Exhibit G to the Haber Decl., at 93:3-20; 95:17-23. See also Cooke DD5 dated 2/27/07, Exhibit P to the Haber Decl.

37.    The NYSID for "Abdul Evans" matched the NYSID assigned to Carl Goodloe. See Cooke Dep., Exhibit G to the Haber Decl., at 93:3-20; 94:15-17; 97:8-18. See also Cooke DD5 dated 2/27/07, Exhibit P to the Haber Decl. See also Omniform Arrest History List and Rap Sheet, pertaining to NYSID 09767586K, Exhibit Q to the Haber Decl.

38.    Plaintiff was arrested on April 25, 2007, which was the date of the Lightning Strikes Twice investigation takedown, on the charge of Conspiracy in the First Degree (NYPL §105.17). See Omniform Arrest Report pertaining to plaintiff's 4/25/07 arrest, Exhibit R to the Haber Decl. See also Rios Dep., Exhibit K to the Haber Decl., at 23:15-20. See also, Pl. Dep., Exhibit D to the Haber Decl., at 136:6-18.

39.    Neither Detective Cooke, Detective Dauge, Sergeant Ramirez, nor Sergeant Chiodi was present at the scene of plaintiff's arrest on April 25, 2007. See Cooke Dep., Exhibit G to Haber Decl., at 147:3-13; 147:21-148:16. See also, Relevant Excerpts of Memobooks of Detectives Cooke and Dauge and Sergeants Ramirez and Chiodi, dated April 25, 2007, annexed collectively to the Haber Decl. as "Exhibit S."

40.    On April 25, 2007, at the scene of plaintiff's arrest, U/C #2570 identified plaintiff as the individual from whom he purchased crack cocaine on January 25, 2006. U/C Dep., Exhibit E to the Haber Decl., at 184:18–185:20. See also, Rios Dep., Exhibit K to the Haber Decl., at 23:15-20.

41.    On April 26, 2007, U/C #2570 positively identified plaintiff as the individual from whom he purchased crack cocaine on January 25, 2006, during a confirmatory

identification procedure held at the 77th Precinct.  See U/C Dep., Exhibit E to the Haber Decl., at 182:4-183:12.   See also Follow-up Informationals dated April 25, 2007 and April 26, 2007, annexed collectively to the Haber Decl. as "Exhibit R."

42.     Throughout the Lightning Strikes Twice investigation, Detective Cooke provided the "Undercover Buy Reports" that mentioned "JD Hood" to ADA Rios, among other police paperwork, and had conversations with her regarding the identification procedures wherein JD Hood was identified as plaintiff.  Rios Dep., Exhibit K to the Haber Decl., at 13:14-15: 12; 30:11-22.  Cooke Dep., Exhibit G to the Haber Decl., at 153:21–155:12, 195:21-7.

43.     During the course of the Cypress Hills investigation, confidential informants were deployed for the purpose of purchasing narcotics and for debriefing about their knowledge of the Cypress Hills development.  See Cooke Dep., Exhibit G to the Haber Decl., at 12:5-18; 156:18-4.

44.     During the investigation, a confidential informant (hereinafter "CI") provided information to Detective Cooke and the KCDA regarding plaintiff's criminal activities within Cypress Hills Houses, which the KCDA then used as evidence in further support of the Conspiracy charge against plaintiff.  See Cooke Dep., Exhibit G to the Haber Decl., at 154:20-157:19; 166:12-16; 170:14-175:23; 177:6-16; 179:25-182:3, 186:6-187:9.  See also Rios Dep., Exhibit K to the Haber Decl., at 16:6-24; 63:5-79:21.

45.     It was the KCDA's decision to prosecute plaintiff based on "what took place in the case" and "historical testimony" that the CI provided to the Grand Jury regarding plaintiff's criminal activities within Cypress Hills Houses.  See Rios Dep., Exhibit K to the Haber Decl., at 67:13-68:6; 75:8-22.  Cooke Dep., Exhibit G to the Haber Decl., at 155:2-157: 19; 173:7-175:23.

- 11 -

46.     The KCDA made a determination as to whether the CIs possessed enough information about certain individuals to charge them with Conspiracy in the First Degree.  Rios Dep., Exhibit K to the Haber Decl., at 75: 8-22, 77:20-79: 3.  See also, Cooke Dep., Exhibit G to the Haber Decl., at 175:14-23.

47.     ADA Rios had learned from a previous long-term investigation at Cypress Hills Houses that the residents of Cypress Hills Houses referred to the geographical layout of the housing development as the "front," the "middle," and the "back."  Rios Dep., Exhibit K to the Haber Decl., at 63:5-64:25.

48.     The sale of crack cocaine to U/C #2570 on January 25, 2006, occurred in the "front" section of Cypress Hills Houses.  Rios Dep., Exhibit K to the Haber Decl., at 65:2-68:6.

49.     During the course of the Lightning Strikes Twice investigation, the CI informed ADA Rios that plaintiff was part of a group of individuals who sold drugs in the front section of Cypress Hills Houses.  Rios Dep., Exhibit K to the Haber Decl., at 16:21-17:12;  65:2-68:9.

50.     The CI also informed ADA Rios that, in the hierarchy of the drug ring, plaintiff was a "worker who received his product from someone else."  Rios Dep., Exhibit K to the Haber Decl., at 67:22-68:17.  See also, Cooke Dep., Exhibit G to the Haber Decl., at 171:17-24.

51.     The CI also informed ADA Rios to whom plaintiff reported to in the hierarchy, from whom plaintiff obtained drugs, and which "enforcer" watched over plaintiff.  Rios Dep., Exhibit K to the Haber Decl., at 70:4-72:8.

52.     During her deposition, ADA Rios described a "worker" as an individual "who works at the low level, at the street level, selling small quantities to people who are looking to buy drugs."  Rios Dep., Exhibit K to the Haber Decl., at 68:18-25.

53.     During her deposition, ADA Rios described an "enforcer" as an individual "who serves as the muscle, who makes sure that no one intrudes on each other's territory, who makes sure that the workers don't use the drugs themselves and actually funnel the money up to the appropriate people."   Rios Dep., Exhibit K to the Haber Decl., at 69:16-22.

54.     During the course of the Lightning Strikes Twice investigation, U/C #2570 bought narcotics on approximately six occasions from at least one individual who was under the age of 16 years old on the dates of purchase, and informed Detective Cooke of same. See Informational Follow-Ups and NYPD Stop, Question and Frisk Report, with Court-approved redactions, annexed to the Haber Decl., as "Exhibit T."

55.     Detective Cooke signed the felony complaint pertaining to the Lightning Strikes Twice investigation.  See Criminal Court of the City of New York, County of Kings, Felony Complaint, dated April 27, 2007, pertaining to 2007KN031724, annexed to the Haber Decl. as "Exhibit V."  See also, Cooke Dep., Exhibit G to the Haber Decl., at 171:25-172:23.

56.     Plaintiff and approximately 36 others were indicted in connection with the Lightning Strikes Twice investigation. See Indictment No. 10116/07, annexed to the Haber Decl. as Exhibit "X."

57.     Specifically, Plaintiff was indicted on charges of Conspiracy in the First Degree (NYPL § 105.17), Conspiracy in the Second Degree (NYPL § 105.15), Criminal Sale of a Controlled Substance the Third Degree (NYPL § 220.39(1)), Criminal Possession of a Controlled Substance in the Third Degree (NYPL § 220.16(1)), Criminal Sale of a Controlled

Substance in the Fifth Degree (NYPL § 220.06(5)), and Criminal Sale of a Controlled Substance in the Seventh Degree (NYPL § 220.03). Id.

58. The criminal court found that the evidence adduced against plaintiff was legally sufficient to establish all of the offenses charged. See Grand Jury Minutes Decision and Order, dated April 14, 2008, annexed to the Haber Decl. as "Exhibit Y."

59. At some point after plaintiff's arrest, the CI became "cognitively impaired," and became unavailable to testify at plaintiff's criminal trial. Rios Dep., Exhibit K to the Haber Decl., at 77:20-78:2-17. See also Cooke Dep., Exhibit G to the Haber Decl., at 187:10-188: 11.

60. Because ADA Rios believed that she would not have a "facially sufficient case with respect to the conspiracy counts" without the CI, the KCDA decided to dismiss the conspiracy charges as against plaintiff only. See Rios Dep., Exhibit K to the Haber Decl., at 78:22-79:3; 85:11-86: 3.

61. Thereafter, the KCDA decided not to go forward with the prosecution of the charges related to plaintiff's sale of narcotics to U/C #2570 on January 25, 2006, because the KCDA "didn't want to try this case" for a number of reasons, including the facts that ADA Rios did not want to expose U/C #2570 at plaintiff's criminal trial, and that she believed that the out-of-court identifications made of plaintiff on November 30, 2006, December 5, 2006, and February 27, 2007, would not be admissible at trial, and therefore, that she would not have "a strong case." Rios Dep., Exhibit K to the Haber Decl., at 86:4-13; 86:15-95:7; 97:21-99: 8; 111:2-113:12. See also Transcript of Proceedings held before the Honorable Mark Dwyer, Supreme Court of the State of New York, County of Kings, on May 9, 2012 (hereinafter "Tr. of Dismissal Proceedings"), annexed to the Haber Decl. as "Exhibit Z."

62.     The criminal charges were dismissed on or about May 9, 2012, on motion of the Kings County District Attorney's Office ("KCDA").  See Tr. of Dismissal Proceedings, Exhibit Z to the Haber Decl.  See also, Rios Dep., Exhibit K to the Haber Decl., at 80:16-81: 17.

63.     Of the 36 other individuals who were indicted with plaintiff, 32 were convicted or plead guilty.  See Certificates of Disposition of 32 individuals who were convicted under Indictment No. 10116-2007, annexed to the Haber Decl. as "Exhibit AA."

64.     Between approximately 2005 and the beginning of 2007, plaintiff stayed at non-party Kathleen Coleman's apartment, which was located within the Cypress Hills housing complex at 385 Fountain Avenue, Apartment 6G, four to five times per week on a consistent basis.  Pl. Dep., Exhibit D to the Haber Decl., at 71:1–73:18; 75:9-19.

65.     Plaintiff was arrested on September 2, 2005, on the northeast corner of Logan Street and Dumont Avenue, in the confines of the 75th Precinct.  See Omniform Arrest Report, pertaining to plaintiff's arrest on September 2, 2005, annexed to the Haber Decl. as "Exhibit BB."  See also, Pl. Dep., Exhibit D to the Haber Decl., at 101:14-19.

66.     On or about September 13, 2005, plaintiff filed a Complaint in the United States District Court, Eastern District of New York, under Docket Number 05 CV 4336 (SJF) (RML), alleging civil rights violations arising from his arrest on September 2, 2005 (hereinafter the "2005 Lawsuit").  See generally, Complaint filed under Docket Number 05 CV 4336 (SJF) (RML), annexed to the Haber Decl. as "Exhibit CC."

67.     The parties agreed to settle the 2005 Lawsuit on or about December 5, 2005.  See Settlement Agreement, Civil Docket Report for Docket Number 05 CV 4336, at Document No. 4.

68.     None of the individually-named defendants in the instant action were named as defendants in the 2005 Lawsuit.  Id.  See also, generally, Civil Docket Report for Docket Number 05 CV 4336.

69.     Detective Cooke was not involved in plaintiff's arrest on September 2, 2005.  Cooke Dep., Exhibit G to the Haber Decl., at 23:15–24:9; 29:2-25; 43:21-45:24; 55:19-22.

70.     No one told Detective Cooke that plaintiff filed and settled the 2005 Lawsuit.  Cooke Dep., Exhibit G to the Haber Decl., at 45:2-24.

71.     The only time that Detective Cooke became aware that plaintiff filed and settled the 2005 Lawsuit was in the context of the instant action.  Cooke Dep., Exhibit G to the Haber Decl., at 45:2-46:4.

72.     U/C #2570 was assigned as the ghost undercover on September 2, 2005.  U/C Dep., Exhibit E to the Haber Decl., at 121:14-122:6.

73.     The only time that U/C #2570 became aware that plaintiff filed and settled the 2005 Lawsuit was in the context of the instant action. U/C Dep., Exhibit E to the Haber Decl., at 124:12-125:1.

74.     None of the individually-named defendants in the instant action were assigned to the field team that was involved in plaintiff's arrest on September 2, 2005.  See O.C.C.B. Buy Report, pertaining to plaintiff's arrest on September 2, 2005, annexed to the Haber Decl. as "Exhibit BB," at "Field Team" section.

75.     ADA Rios only learned about the 2005 Lawsuit in the context of the instant action.  Rios Dep., Exhibit K to the Haber Decl., at 18:6-17, 85:11-18.

76.     Plaintiff does not remember the exact date upon which he received the settlement payment in connection with the 2005 Lawsuit, nor does he remember the amount of the settlement.  Pl. Dep., Exhibit D to the Haber Decl, at 53:24-55:23.

77.     Plaintiff does not know who was named as defendants in the 2005 Lawsuit. Id. at 56:9-11.

78.     Plaintiff never discussed the 2005 Lawsuit or the settlement payment with anyone other than his lawyers, including members of the NYPD.  Id. at 56:12-57:24.

Dated: July 15, 2016
      New York, New York

                                    ZACHARY W. CARTER
                                    Corporation Counsel of the City of New York
                                    *Attorney for defendants City, U/C #2570, Cooke, Dauge, Ramirez and Chiodi*

By:                      /s/
                                    Erica M. Haber
                                    Senior Counsel
                                    Special Federal Litigation Division
                                    100 Church Street, Room 3-159
                                    New York, New York 10007
                                    212.356.3545

To:     Harold Baker, Esq.
          32 Court Street, Suite 507
          Brooklyn, New York 11201
          718.858.7927
          *Attorney for plaintiff*
          (*via e-mail and first class mail*)

- 17 -