12 CV 3018 (AMD) (VMS)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CARL GOODLOE,

Plaintiff,

-against-

THE CITY OF NEW YORK, UNDERCOVER PLICE
OFFICER #2570, DETECTIVE COOKE, DETECTIVE
DAUGE, SARGEANT RAMIREZ, PLICE OFFICER
FRANK CHIODI, AND JOHN DOE POLICE
OFFICERS 1-5 of the NEW YORK CITY POLICE
DEPARTMENT,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT**

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York*
*100 Church Street - Room 3-159*
*New York, New York  10007*

*Of Counsel:  Erica M. Haber*
*Tel:  (212) 356-3545*
*Matter No. 2012-029273*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF FACTS ...................................................................................... 3

       Plaintiff Involvement in the Lightning Strikes
       Twice Operation........................................................................... 4

       Plaintiff's Arrest and Two Additional Confirmatory
       Identifications ............................................................................. 6

       The Criminal Prosecution ........................................................... 7

       Plaintiff's Arrest on September 2, 2005 & the
       Subsequent Lawsuit ................................................................... 8

LEGAL ARGUMENT............................................................................................. 9

SUMMARY JUDGMENT STANDARD ................................................................ 9

     POINT I

       ANY CLAIMS OTHER THAN MALICIOUS
       PROSECTUION ARE BARRED BY THE
       APPLICABLE STATUTE OF LIMITATIONS...................................... 10

     POINT II

       PLAINTIFF CANNOT ESTABLISH A
       MALICIOUS PROSECUTION CLAIM .................................................. 11

       A.   There Was Probable Cause to Prosecute
            Plaintiff ................................................................................ 13

       B.   Plaintiff Cannot Overcome the Presumption of
            Probable Cause Created By the Indictment ........................... 18

       C.   Plaintiff Failed to Establish that Defendants
            Initiated the Prosecution ...................................................... 20

       D.   Plaintiff Failed To Establish that Defendants
            Acted With Malice............................................................... 21

       E.   The Prosecution Was Commenced by KCDA.................................. 22

**Page**

POINT III

      DEFENDANTS ARE ENTITLED TO QUALIFED
      IMMUNITY ........................................................................................ 23

POINT IV

      PLAINTIFF DOES NOT ALLEGE ANY CLAIMS
      AS AGAINST THE CITY ...................................................................... 24

POINT V

      THE COURT SHOULD DECLINE TO
      EXERCISE SUPPLEMETNAL JURISDICTION ................................... 25

CONCLUSION……………………………………………………………..25

# TABLE OF AUTHORITIES

**Cases**                                                                                                            **Pages**

Bermudez v. City of New York,
   790 F.3d 368 (2d Cir. 2015).....................................................................................20

Bernshtein v. City of New York,
   496 Fed. App'x. 140 (2d Cir. 2012)........................................................................13

Bertuglia v. City of New York,
   133 F. Supp. 3d 608 (S.D.N.Y. 2015)....................................................................22

Brandon v. City of New York,
   705 F. Supp. 2d 261 (S.D.N.Y. 2010)....................................................................19

Broughton v. State of New York,
   37 N.Y.2d 451 (1975) ............................................................................................11

Camreta v. Greene,
   131 S.Ct. 2020 (2011)............................................................................................24

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986)..................................................................................................9

Colon v. City of New York,
   60 N.Y.2d 78 (1983) ..............................................................................................11

Coggins v. Buonora,
   776 F.3d 108 (2d Cir. 2015) ..................................................................................19

Fappiano v. City of New York,
   2016 U.S. App. LEXIS 4210 (2d Cir. 2016) ...........................................................9

Gil v. County of Suffolk,
   590 F. Supp. 2d 360 (E.D.N.Y. 2008) ..................................................................18

Gilman v. Marsh & McLennan Cos., Inc.,
   868 F. Supp. 2d 118, 128 (S.D.N.Y. 2012) ..........................................................22

Harlow v. Fitzgerald,
   457 U.S. 800 (1992)...............................................................................................23

Hewitt v. City of New York,
   09 CV 0214, 2012 U.S. Dist. LEXIS 141067
   (E.D.N.Y. Sept. 27, 2012
   aff'd, 544 Fed. Appx. 24 (2d Cir. 2013) ..................................9, 12, 14, 15, 16, 17, 19, 21, 24

Hoffman v. Nassau County Police Dep't,
   06 CV 1947, 2008 U.S. Dist. LEXIS 35377 (E.D.N.Y. Apr. 30, 2008)................................2, 8

**Cases**                                                                                          **Page**

Jean v. City of New York,
08 CV 0157 (RER), 2009 U.S. Dist. LEXIS 98239 (E.D.N.Y. Oct. 22, 2009) ...........................24

Jeffes v. Barnes,
208 F.3d 49 (2d Cir. 2000)..................................................................................................24

Jocks v. Tavernier,
        316 F.3d 128 (2d. Cir. 2003)......................................................................................11

Johnson v. Constantellis,
        221 Fed. App'x 48 (2d Cir. 2007).............................................................................13

Jouthe v. City of New York,
        05 CV 1374 (NGG), 2009 U.S. Dist. LEXIS 18163 (E.D.N.Y. Mar. 10, 2009) ...................22

Kinzer v. Jackson,
        316 F.3d 139 (2d Cir. 2003)................................................................................11, 13

Lowth v. Town of Cheektowaga,
        82 F.3d 563 (2d Cir. 1996).........................................................................................22

Maldonado v. City of New York,
        11 Civ. 3514, 2014 U.S. Dist. LEXIS 26239 (S.D.N.Y. Feb. 26, 2014) ...............................19

Malley v. Briggs,
        475 U.S. 335 (1986)....................................................................................................23

Manganiello v. City of New York,
        612 F.3d 149 (2d Cir. 2011).................................................................................13, 18

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
        475 U.S. 574 (1986)......................................................................................................9

Mitchell v. Forsyth,
        472 U.S. 511 (1985)....................................................................................................23

Monell v. Dep't of Social Servs.,
        436 U.S. 658 (1978) ...................................................................................................24

Nnodimele v. Derienzo,
        13 CV 3461, 2016 U.S. Dist. LEXIS 9881 (E.D.N.Y. Jan. 27, 2016).............................18, 19

Ormiston v. Nelson,
        117 F.3d 69, 71 (2d Cir. 1997) ……………………………………………….....................10

Owens v. Okure,
        488 U.S. 235, 249-50 (1989)……………………………………………………………...10

**Cases**            **Page**

O'Neill v. Town of Babylon,
    986 F.2d 646 (2d Cir. 1993).................................................................................24

Pearl v. City of Long Beach,
    296 F.2d 76, 79 (2d Cir. 2002)..........................................................................24

People v. Ackies,
    79 A.D.3d 1050 (2d Dep't 2010) ......................................................................16

People v. Canales,
    32 Misc. 3d 1211[A] ..........................................................................................16

People v. McGee,
    49 N.Y.2d 48 (1979) ..........................................................................................16

Peterson v. Regina,
    935 F. Supp. 2d 628 (S.D.N.Y. 2013)..............................................................18

Rehberg v. Paulk,
    132 S. Ct. 1497, 1505-10 (2012) ......................................................................19

Rohman v. New York City Transit Auth.,
    215 F.3d 208 (2d Cir. 2000)......................................................................11, 20

Rothstein v. Carriere,
    373 F.3d 275 (2d Cir. 2004)......................................................................11, 18

Rounseville v. Zahl,
    13 F.3d 625 (2d Cir. 1994)................................................................................13

Saucier v. Katz,
    533 U.S. 194 (2001)...........................................................................................23

Savino v. City of New York,
    331 F.3d 63 (2d Cir. 2003)........................................................................11, 18

Smith-Hunter v. Harvey,
    95 N.Y.2d 191 (2000) .......................................................................................11

Townes v. City of New York,
    176 F.3d 138 (2d Cir. 1999)......................................................................21, 22

Ullah v. Office of the Dist. Attorney,
    07 CV 2687, 2009 U.S. Dist. LEXIS 61607 (S.D.N.Y. July 20, 2009)............................ 23-24

United States v. Colon,
    250 F.3d 130, 135 (2d Cir. 2001)....................................................................14

**Cases**                                                                                          **Page**

Williams v. City of New York,
    10 Civ. 9594 (CM), 2012 U.S. Dist.
    LEXIS 21729 (S.D.N.Y. Feb. 17, 2012)...................................................................14, 18, 22

**Statutes**

42 U.S.C. § 1981................................................................................................................2

42 U.S.C. § 1983............................................................................................................2, 11

42 U.S.C. § 1985................................................................................................................2

Fed. R. Civ. P. 56(c) ..........................................................................................................9

Local Civil Rule 56.1..........................................................................................................2

NYPL § 105.15............................................................................................................13, 16

NYPL § 105.17........................................................................................................6, 13, 16

NYPL § 220.03..................................................................................................................13

NYPL § 220.06(5)..............................................................................................................13

NYPL § 220.16(1)..............................................................................................................13

NYPL § 220.39(1)..............................................................................................................13

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

CARL GOODLOE,

                                                 Plaintiff,

                                                            12 CV 3018 (AMD) (VMS)

                -against-

THE CITY OF NEW YORK, UNDERCOVER PLICE
OFFICER #2570, DETECTIVE COOKE, DETECTIVE
DAUGE, SARGEANT RAMIREZ, PLICE OFFICER
FRANK CHIODI, AND JOHN DOE POLICE OFFICERS
1-5 of the NEW YORK CITY POLICE DEPARTMENT,

                                               Defendants.

-----------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

        Defendants City of New York (hereinafter "City"), Undercover Police Officer #2570 (hereinafter "U/C #2570"), Detective Christopher Cooke (s/h/a "Detective Cook") (hereinafter "Detective Cooke"), Detective Vincent Dauge (s/h/a "Detective Dauge"), Sergeant Claudio Ramirez (s/h/a "Sargeant [sic] Ramirez"), and Sergeant Frank Chiodi (s/h/a "Police Officer Frank Chiodi"), by their attorney, Zachary W. Carter, Corporation Counsel of the City of New York, respectfully submit this memorandum of law in support of their motion for summary judgment.

## PRELIMINARY STATEMENT

        Defendants had probable cause to prosecute plaintiff has a matter of law.  It is undisputed that plaintiff, along with 36 others, were indicted on a total of more than 360 counts of narcotics and conspiracy charges, after an approximately 19-month-long investigation conducted by members of the New York City Police Department ("NYPD") and the Office of

the District Attorney, Kings County ("KCDA"), into a large-scale conspiracy to sell narcotics within Cypress Hills Houses, a public housing complex located in the East New York section of Brooklyn.  It is also undisputed that at the time of his arrest on April 25, 2007,[1] plaintiff had been identified as a "worker" in the hierarchy of the drug ring, and as the individual who sold crack cocaine to U/C #2570 on January 25, 2006, inside of an apartment of a co-conspirator.  Of the 36 other individuals indicted with plaintiff, 32 were convicted or pleaded guilty.  See generally, Defendants' Statement of Material Facts Pursuant to Local Civil Rule 56.1, dated July 15, 2016 (hereinafter "Defs. 56.1").

Plaintiff brings this 42 U.S.C. § 1983 action against Defendants alleging only one timely cause of action – malicious prosecution.  See, Amended Complaint, annexed to the Declaration of Erica M. Haber, dated July 15, 2016 (hereinafter "Haber Decl."), as "Exhibit B" (hereinafter "Am. Compl."), at ¶¶ 83-85.[2]  Specifically, plaintiff claims, *inter alia*, that he is "innocent" of the crimes charged, and that Defendants fabricated evidence to retaliate against him because he received a settlement payment in connection with a prior lawsuit against the City.  Id. at ¶¶ 11, 26-32, 52.  Plaintiff has failed, however, to present a shred of evidence in support of his purported claim, and instead, relies on mere conjecture and surmise to support his allegations.  Accordingly, since there was probable cause to prosecute plaintiff as a matter of

---

[1] Plaintiff incorrectly noted the date of arrest as April 27, 2007, in his Amended Complaint.  See Defs. 56.1 at ¶ 3.  "An allegation of time or place is material when testing the sufficiency of a pleading."  Fed. R. Civ. P. 9(f).

[2] To the extent the Court construes the Amended Complaint to set forth a claim for malicious prosecution pursuant to 42 U.S.C. §§ 1981 and 1985, it fails based upon the intra-corporate conspiracy doctrine.  Hoffman v. Nassau County Police Dep't, 06 CV 1947 (SJF) (AKT), 2008 U.S. Dist. LEXIS 35377, *14-15 (E.D.N.Y. Apr. 30, 2008) ("It is well-settled there can be no actionable conspiracy under the civil laws if the alleged conspirators are employees of a single organization and their alleged actions were taken in the course of their employment") (citations and quotations omitted).

law, and plaintiff has failed to rebut the presumption of probable cause created by the indictment, Defendants respectfully submit that summary judgment should be granted in their favor, and that the Amended Complaint should be dismissed in its entirety, and with prejudice.

## STATEMENT OF FACTS

The purpose of a long-term narcotics-related investigation is to try to identify who the "players" are in certain areas.  Defs. 56.1 at ¶ 12.  In or around September 2005, Detective Cooke was assigned to be the lead investigator for a long-term investigation conducted by NYPD and KCDA into a conspiracy to sell narcotics in and around the Cypress Hills Houses.  Id. at ¶¶4-6.  This investigation was known as the "Lightning Strikes Twice" operation.  Id. at ¶ 5. Assistant District Attorney Gloria Rios (hereinafter "ADA Rios") was assigned to work on the investigation sometime prior to October 2005.  Id. at ¶ 11.

Defendant Sergeant Ramirez was one of Detective Cooke's supervisors during the investigation.  Id. at ¶ 9.  Defendant Detective Dauge was the alternate case detective assigned to the investigation.  Id. at ¶ 8.  Defendant U/C #2570 worked on the investigation as an undercover between approximately September 2005 and April 2007.  Id. at ¶¶ 7.  During that time, U/C #2570 made numerous purchases of narcotics from various individuals at the Cypress Hills Houses.  Significantly, he bought narcotics including from at least one individual who was under the age of 16 years old on the dates of purchase on at least six occasions.  Id. at ¶ 54.

Confidential informants were also used during the investigation to purchase narcotics and to provide information about the Cypress Hills development itself, and the criminal activities that occurred therein.  Id. at ¶ 43.  The KCDA then evaluated the information provided by the confidential informants to determine whether to charge certain individuals with conspiracy to sell narcotics.  Id. ¶ 46.

3

**Plaintiff's Involvement in the Lightning Strikes Twice Operation**

      Prior to April 25, 2007, plaintiff was arrested 18 times.  Omniform Arrest History List, annexed to the Haber Decl. as "Exhibit Q."  Eight of the 18 prior arrests occurred in Brooklyn, in the confines of the 75th Precinct, where Cypress Hills Houses is located, and where Detective Cooke worked for the majority of his career with the NYPD.  See id; Deposition of Detective Christopher Cooke, taken on July 31, 2014 (hereinafter "Cooke Dep."), annexed to the Haber Decl. as "Exhibit G," at 7:21-9: 20; 20:20-26:16.  Between approximately 2005 and the beginning of 2007 – the same time frame as the Lightning Strikes Twice operation – plaintiff stayed with his girlfriend, who resided at 385 Fountain Avenue, in Cypress Hills Houses, four to five times per week.  Defs. 56.1 at ¶ 64.

      On January 25, 2006, at approximately 6:30 p.m., in connection with the Lightning Strikes Twice operation, U/C #2570 bought crack cocaine inside of 305 Fountain Avenue, Apartment 7A, from an individual then-identified as "JD Hood." Id. at ¶ 13.  Apartment 7A was occupied by co-conspirator Larry Bozeman (then-identified as "JD Brown Jacket"), one of the subjects of the operation, and Mr. Bozeman was present during the sale.[3] Id. at ¶ 48.

      On November 30, 2006, U/C #2570 met with JD Brown Jacket to purchase more narcotics.  JD Brown Jacket informed U/C #2570, that they would have to go to see another individual then-identified as "JD Ace" at 345 Fountain Avenue, another building located within Cypress Houses, to do so.  Id. at ¶ 14.  On the way to 345 Fountain Avenue, U/C #2570 saw an individual on Blake Avenue whom he immediately recognized as JD Hood.  Id. at ¶¶ 16-17.  JD Brown Jacket asked JD Hood if he had "weight," and JD Hood responded that another subject of

---

[3] Upon information and belief, Larry Bozeman is deceased.

the investigation then-identified as "JD Big" "deals with the weight," but that he "could get [U/C #2570 and JD Brown Jacket] some dimes if [they] wanted." Id. at ¶ 18.

At approximately 1:15 p.m., Detective Cooke, who was conducting observations near the corner of Fountain Avenue and Blake Avenue, observed U/C #2570 and JD Brown Jacket engaged in a conversation with a black male with braids in his hair, an individual whom Detective Cooke recognized from prior encounters as "Carl Goodloe." Id. at ¶ 19-21. Detective Cooke recognized plaintiff from a separate prior narcotics investigation at Milford Street and Blake Avenue, in Brooklyn. Cooke Dep., Ex. G to Haber Decl., at 20:17-21:17, 23:14-24:5, 26:17-28:20, 30:2-31:15. Indeed, each of plaintiff's prior arrests in the 75th Precinct occurred in the vicinity of Milford and Blake. See Omniform Arrest Reports pertaining to plaintiff's prior arrests in the 75th Precinct, annexed collectively to the Haber Decl. as "Exhibit DD." At approximately 1:30 p.m., U/C #2570 contacted Detective Cooke to identify plaintiff as JD Hood, the individual from whom he bought crack cocaine on January 25, 2006. Defs. 56.1 at ¶ 22.

On December 5, 2006, Detective Cooke presented a photo array to U/C #2570, and U/C #2570 positively identified photo #6 – which was a photo of plaintiff – as "JD Hood." Id. at ¶¶ 23-24. The photo of plaintiff used in the photo array was taken in connection with plaintiff's prior arrest on July 22, 2006. Id. at ¶ 25.

On February 27, 2007, Detectives Cooke and Dauge and Sergeant Ramirez were conducting surveillance in connection with the operation. Defs. 56.1 at ¶ 29. At approximately 7:30 p.m., Detective Cooke observed plaintiff at the corner of Euclid and Sutter Avenues, and stopped him to conduct an identification procedure. Id. at ¶¶ 30-31. Thereafter, U/C #2570 again positively identified plaintiff as "JD Hood." Id. at ¶ 32. During the stop, plaintiff identified himself as "Abdul Evans," claimed not to have identification, and, as proof of his

identity, showed Detective Cooke an NYPD Property Voucher receipt that was given to him following his arrest the day before on unrelated charges, wherein he used the same alias.  Id. at ¶ 33.  Detective Cooke subsequently checked the NYSID number for "Abdul Evans," and determined that the NYSID for "Abdul Evans" matched the NYSID assigned to plaintiff.  Id. at ¶¶ 36-37.

During a previous long-term investigation into a narcotics sales conspiracy at Cypress Hills Houses, ADA Rios had learned that the residents of Cypress Hills Houses referred to the geographical layout of the housing development as the "front," the "middle," and the "back," and that drug dealers would sell drugs in those areas.  Id. at ¶ 47.  Larry Bozeman's apartment is located in the front section of the development.  Id. at ¶ 48.  During the Lightning Strikes Twice investigation, a confidential informant ("CI") informed ADA Rios that plaintiff was part of a group of individuals who sold drugs in the front section of Cypress Hills Houses.  Id. at ¶ 49.  The CI also informed ADA Rios that, in the hierarchy of the drug ring, plaintiff was a "worker"[4] who received his product from someone else," and informed her as to whom plaintiff reported to in the hierarchy, from whom plaintiff obtained drugs, and which "enforcer"[5] watched over plaintiff.  Id. at ¶ 50-51.

**Plaintiff's Arrest and Two Additional Confirmatory Identifications**

Plaintiff was arrested on April 25, 2007, the date of the Lightning Strikes Twice case takedown, on the charge of Conspiracy in the First Degree (NYPL § 105.17).  Id. at ¶ 38.

---

[4] During her deposition, ADA Rios described a "worker" as an individual "who works at the low level, at the street level, selling small quantities to people who are looking to buy drugs."  Defs. 56.1 at ¶ 52.

[5] During her deposition, ADA Rios described an "enforcer" as an individual "who serves as the muscle, who makes sure that no one intrudes on each other's territory, who makes sure that the workers don't use the drugs themselves and actually funnel the money up to the appropriate people."  Id. at ¶ 53.

Defendant now-Sergeant Chiodi was the Assigned Arresting Officer for plaintiff's arrest.  Id. at ¶ 10.  On April 25, 2007, at the scene of plaintiff's arrest, U/C #2570 once again identified plaintiff as the individual from whom he purchased crack cocaine on January 25, 2006.  Id. at ¶ 40.  Then, on April 26, 2007, at the 77th Precinct, U/C #2570 positively identified plaintiff for the fifth time, as the individual from whom he purchased crack cocaine on January 25, 2006.  Id. at ¶ 41.  Neither Sergeants Chiodi or Ramirez, nor Detectives Cooke or Dauge were present at the scene of plaintiff's arrest on April 25, 2007.  Id. at ¶ 39.

**The Criminal Prosecution**

Throughout the Lightning Strikes Twice investigation, and prior to plaintiff's arrest, Detective Cooke provided to ADA Rios the "Undercover Buy Reports" and other police paperwork, and also had conversations with her regarding U/C #2570's identifications of plaintiff as "JD Hood."  Id. at ¶ 42.  In addition, Detective Cooke signed the criminal court complaint pertaining to the Lightning Strikes Twice investigation.  Id. at ¶ 55.  However, it was the KCDA's decision to prosecute plaintiff, based on "what took place in the case" and "historical testimony" that the CI provided to the Grand Jury regarding plaintiff's criminal activities within Cypress Hills Houses.  Id. at ¶ 45.

Plaintiff and approximately 36 others were indicted in connection with the Lightning Strikes Twice investigation.  Id. at ¶ 56.  Specifically, plaintiff was indicted on counts pertaining to the sale and/or possession of a controlled substance and two counts of conspiracy.  See Indictment No. 10116/07, annexed to the Haber Decl. as "Exhibit X."  On or about April 14, 2008, the Honorable Danny K. Chun, Supreme Court of the State of New York, County of Kings, Criminal Term, found that the evidence adduced against plaintiff was legally sufficient to establish all of the offenses charged.  Id. at ¶ 58.

At some point after plaintiff's arrest, the CI became "cognitively impaired," and became unavailable to testify at plaintiff's criminal trial.  Id. at ¶ 59.  Because ADA Rios believed that she would not have a "facially sufficient case with respect to the conspiracy counts" without the CI, the KCDA decided to dismiss the conspiracy charges against plaintiff only.  Id. at ¶ 60.  On or about May 9, 2012, the KCDA decided end the prosecution of plaintiff for a number of reasons, including the facts that ADA Rios did not want to expose U/C #2570's identity at plaintiff's criminal trial, and that she believed that the out-of-court identifications made of plaintiff on November 30, 2006, December 5, 2006, and February 27, 2007, would not be admissible at a criminal trial.  Id. at ¶ 61.  The criminal charges were dismissed against plaintiff on or about May 9, 2012, on motion of the KCDA.  However, of the 36 other individuals who were indicted with plaintiff, 32 were convicted or pleaded guilty.  Id. at ¶ 62.

**Plaintiff's Arrest on September 2, 2005 & the Subsequent Lawsuit**

On September 2, 2005, plaintiff was arrested on narcotics charges by members of NYPD assigned to Narcotics Borough Brooklyn North, in the confines of the 75th Precinct.  Id. at ¶ 65.  None of the individually-named defendants in the instant action was assigned to the field team involved with that arrest, except for U/C #2570.  Id. at ¶ 72-74.

On September 13, 2005, plaintiff filed a lawsuit in the United States District Court, Eastern District of New York, under Docket Number 05 CV 4336 (SJF) (RML), alleging civil rights violations arising from his arrest on September 2, 2005 (hereinafter the "2005 Lawsuit").  Id. at ¶ 66.  None of the individually-named defendants in the instant action were named as defendants in the 2005 Lawsuit, including U/C #2570.  Id. at ¶ 68.  The parties agreed to settle the 2005 Lawsuit on or about December 5, 2005.  Id. at ¶ 67.  Neither Detective Cooke, U/C #2570, nor ADA Rios had any knowledge of the 2005 Lawsuit during the pendency of the

Lightning Strikes Twice operation.  In fact, Detective Cooke, U/C #2570, and ADA Rios only learned about the 2005 Lawsuit in the context of the instant action.  Id. at ¶¶ 70-71, 73, 75.

## LEGAL ARGUMENT

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute.  See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  While courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party in deciding whether a genuine issue of material fact exists, nevertheless, once a motion for summary judgment is made and supported, the non-moving party must come forward with specific facts showing there is a genuine issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).  "A party…cannot overcome summary judgment by relying on mere speculation or conjecture as to the true nature of the facts because conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist."  Fappiano v. City of New York, 2016 U.S. App. LEXIS 4210, *2 (2d Cir. 2016) (Summary Order) (quotations and citations omitted). See also, Hewitt v. City of New York, 09 CV 0214 (RJD), 2012 U.S. Dist. LEXIS 141067, *11-12 (E.D.N.Y. Sept. 27, 2012) (granting defendants summary judgment), aff'd, 544 Fed. Appx. 24 (2d Cir. 2013).[6]  For the reasons set forth herein, summary judgment should be granted to Defendants.

---

[6] The Hewitt case arises from the same long-term investigation at issue in this action. Detectives Cooke and Dauge and Undercover Officer #2570, who, upon information and belief, was then-known as "Undercover Officer No. 55," were named as defendants therein as well.

9

## POINT I

## ANY CLAIMS OTHER THAN MALICIOUS PROSECTUION ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS

Plaintiff makes a plethora of allegations throughout the Amended Complaint that could be construed as claims for false arrest, unduly suggestive identification procedures, excessive force, deprivation of due process, and unlawful strip search. See Am. Compl., Ex. B to the Haber Decl., at ¶¶ 15, 18, 21, 23, 40-43, 57, and 72-74. The Amended Complaint, however, asserts only one cause of action – a federal claim for malicious prosecution. Id. at ¶¶ 83-85. To the extent the Court construes any other claims from the factual allegations in the Amended Complaint, such claims are barred by the applicable statute of limitations.

For Section 1983 actions, "the applicable limitations period is found in the 'general or residual [state] statute [of limitations] for personal injury actions.'" Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997) (quoting Owens v. Okure, 488 U.S. 235, 249-50 (1989)) (alterations in original). New York's three-year statute of limitations for unspecified personal injury actions applies to claims under section 1983. See Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002). A section 1983 claim accrues, and the statute of limitations begins to run, when the plaintiff knows or has reason to know of the injuries forming the basis of the action. See Pearl, 296 F.3d at 80. Here, plaintiff filed the original Complaint on June 15, 2012 – more than five years the date of his arrest on April 25, 2007, the last date upon which these causes of action would have accrued. Thus, any and all federal claims aside from malicious prosecution are barred by the three-year statute of limitations applicable to Section 1983 claims. Accordingly, summary judgment is warranted on any such purported claims.

## POINT II

## PLAINTIFF CANNOT ESTABLISH A MALICIOUS PROSECUTION CLAIM

Plaintiff's sole cause of action in the Amended Complaint is for "Malicious Prosecution against Individual Defendants." Am. Compl. at ¶¶ 83-85. However, this claim fails as a matter of law. The law places "a heavy burden on malicious prosecution plaintiffs." Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004) (citing Smith-Hunter v. Harvey, 95 N.Y.2d 191, 195 (2000)). To state a claim of malicious prosecution under New York law, plaintiff must show: (1) that the defendants commenced or continued a criminal proceeding against plaintiff; (2) that the proceeding was terminated in the plaintiff's favor; (3) an absence of probable cause for the proceeding; and (4) that the proceeding was instituted with malice. Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003) (citation omitted) (citing Colon v. City of New York, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453 (1983)); Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003); Broughton v. State of New York, 37 N.Y.2d 451, 456-57 (1975). Plaintiff must also show "….that there was a [ ] sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Rohman v. New York City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000). Plaintiff cannot satisfy the requirements necessary to survive summary judgment on his claim.

Defendants note that plaintiff has not specifically pled a state law claim for malicious prosecution. However, "[c]laims for malicious prosecution brought under § 1983 are substantially the same as claims for malicious prosecution under state law." See Jocks v. Tavernier, 316 F.3d 128, 134 (2d. Cir. 2003). Accordingly, even if plaintiff did bring a state law malicious prosecution claim, because the elements for such a claim are synonymous with those under federal law, any state law claim would fail for the same reasons set forth herein.

11

In addition, Defendants also note that the Honorable Raymond J. Dearie, United States District Judge, and subsequently the Second Circuit, already granted summary judgment to defendants Detectives Cooke and Dauge and U/C #2570, and others, in a companion case brought by co-indictee Jennifer Hewitt, wherein she alleged civil rights violations arising from the Lighting Strikes Twice operation.  See generally, Hewitt, 2012 U.S. Dist. LEXIS 141067. Specifically, in Hewitt, plaintiff claimed, inter alia, that she was falsely arrested and maliciously prosecuted after U/C #2570 identified her as "JD Altima," an individual who was present with co-indictee Carl Hewitt in a vehicle, when he sold or attempted to sell crack cocaine to U/C #2570.  Id. at *2-11.  JD Altima assisted in the narcotics transactions by reaching under the seat and placing a small bag into Carl Hewitt's hand.  Id. at *4-7.  Hewitt was also arrested on April 25, 2007, and was subsequently indicted on conspiracy charges.  The charges were later dismissed.  Id. at 9-11.  The Hewitt Court found, inter alia, that Detectives Cooke and Dauge, and U/C #2570 had probable cause to arrest and prosecute plaintiff as a matter of law based on U/C #2570's identifications of plaintiff as "JD Altima," and that U/C #2570 and Detective Cooke would also be entitled to absolute and/or qualified immunity.  See generally, id.

The Hewitt case is entirely persuasive here, as the facts of this case are incredibly similar to the facts of Hewitt – that is, U/C #2570 identified plaintiff as the individual from whom he purchased crack cocaine, in the presence of another co-conspirator (Larry Bozeman), and plaintiff was subsequently arrested and indicted as a result.  Moreover, this case may even be stronger than the Hewitt case, in that a CI provided additional information to ADA Rios about plaintiff's narcotics-related activities in Cypress Hills Houses, and thus provided additional probable cause. See Point II(a), infra.  Accordingly, and for the reasons set forth more fully below, summary judgment is warranted.

A.      **There Was Probable Cause to Prosecute Plaintiff**

           "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." Manganiello v. City of New York, 612 F.3d 149, 161-62 (2d Cir. 2011). Probable cause to commence a criminal proceeding exists when a defendant has "…knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." Bernshtein v. City of New York, 496 Fed. App'x. 140, 142 (2d Cir. 2012) (quoting Rounseville v. Zahl, 13 F.3d 625, 629 (2d Cir. 1994)).   "If probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined 'by the discovery of some intervening fact.'"   Johnson v. Constantellis, 221 Fed. App'x 48, 50 (2d Cir. 2007) (quoting Kinzer, 316 F.3d at 144)).

           Based on the information provided by the undercover officer and the CI to Defendants and ADA Rios, there was probable cause to prosecute plaintiff for each of the crimes set forth in the indictment – i.e., Conspiracy in the First Degree (NYPL § 105.17), Conspiracy in the Second Degree (NYPL § 105.15), Criminal Sale of a Controlled Substance the Third Degree (NYPL § 220.39(1)), Criminal Possession of a Controlled Substance in the Third Degree (NYPL § 220.16(1)), Criminal Possession of a Controlled Substance in the Fifth Degree (NYPL § 220.06(5)), and Criminal Possession of a Controlled Substance in the Seventh Degree (NYPL § 220.03).  See Indictment No. 10116/07, annexed to the Haber Decl. as "Exhibit X."  First, it is undisputed that Defendants knew of several undisputed material facts prior to the commencement of the prosecution: (1) on January 25, 2006, U/C #2570 bought crack cocaine from an individual then-identified as "JD Hood" in Larry Bozeman's apartment in Cypress Hills Houses, while Larry Bozeman – a subject of the investigation – was present; (2) during the course of the Lightning Strikes Twice operation, U/C #2570 also purchased narcotics from at

13

least one individual who was under the age of 16 years old on the dates of purchase on six occasions; (3) U/C #2570 identified plaintiff as "JD Hood" on five different occasions – November 30, 2006, December 5, 2006, February 27, 2007, April 25, 2007, and April 26, 2007; and (4) a CI provided specific information to NYPD and KCDA about plaintiff's criminal activity in Cypress Houses.

Under the collective knowledge doctrine, police officers are entitled to rely on the knowledge of fellow officers involved in the same investigation to justify an arrest.  United States v. Colon, 250 F.3d 130, 135 (2d Cir. 2001).  "Unless the arresting officer's reliance on the transmitted information is unreasonable under the circumstances, information received from another officer is sufficient to establish probable cause, regardless of the plaintiff's actual guilt or innocence."  Williams v. City of New York, 10 Civ. 9594 (CM) (DCF), 2012 U.S. Dist. LEXIS 21729, *17 (S.D.N.Y. Feb. 17, 2012) (citation omitted).  Moreover, "[w]hen assessing probable cause to arrest, police officers are…entitled to rely – as long as such reliance is reasonable – on information provided by other law enforcement officials, including identifications which may later turn out to be mistaken."  Hewitt, 2012 U.S. Dist. LEXIS 141067, *14.

Plaintiff does not – nor can he – dispute that U/C #2570 informed Detective Cooke (and, by association, Detective Dauge, and Sergeants Ramirez and Chiodi) that plaintiff sold him crack cocaine – a controlled substance – on January 25, 2006.  Rather, plaintiff asserts his innocence, and claims, without any corroboration or support, that Defendants fabricated the identifications in retaliation for receiving a settlement in connection with plaintiff's prior lawsuit against the City – a lawsuit of which Defendants – and ADA Rios – undisputedly had no knowledge.  These assertions consist of nothing more than mere conjecture and surmise and are

insufficient to defeat summary judgment.  See id. at *18 ("Simply stating that something raises an inference does not make it so").

　　　　　While it is true that Detective Cooke had knowledge of plaintiff's prior criminal activity, and recognized him on November 30, 2006 and February 27, 2007 because of it, plaintiff has utterly failed to provide any evidence to support his allegations that Defendants colluded to falsely identify plaintiff as "JD Hood" based on this knowledge.  In fact, the "evidence" that plaintiff alleges as proof of this so-called collusion has been specifically controverted by the record.  That is, plaintiff alleges that, since they knew who plaintiff was, Defendants conspired to improperly use a mug shot photo from plaintiff's arrest on September 2, 2005 (i.e., the arrest that is the subject of the 2005 Lawsuit) in the photo array presented to U/C #2570 on December 5, 2006, and that, as such, the photo array was inherently unreliable.  See Amended Complaint at ¶¶ 33-35.  It is undisputed, however, that the photo used in the photo array on December 5, 2006, was taken in connection with plaintiff's arrest on July 22, 2006, not his arrest on September 2, 2005, as plaintiff conclusorily alleges.

　　　　　Even assuming arguendo, for the purposes of this motion only, that plaintiff was innocent of the crimes charged as he claims, and that U/C #2570 misidentified plaintiff as "JD Hood," "mere misidentifications do not undermine probable cause; police officers are entitled to make reasonable mistakes when identifying suspects."  Id. at *13.  Again, plaintiff has not submitted any credible evidence to show that U/C #2570 intentionally fabricated the identifications.  See id. at *18-19 ("Plaintiff points to no evidence of ill will or malice on the part of [U/C #2570], no arguable motivation to fabricate, or any other coherent theory for why an undercover involved in the investigation and arrests of dozens would lie about the existence, identity and actions of one") (emphasis in original).  In fact, even though he claims that

15

Defendants retaliated against him because he received a settlement payment in connection with the 2005 lawsuit, plaintiff does not know who was named as a defendant in the 2005 Lawsuit, and he admits that he never spoke to anyone aside from his attorney about the 2005 Lawsuit or the resulting settlement, including any member of the NYPD.  See Defs. 56.1 at ¶¶ 76-78. Plaintiff's theory is "nothing more than unsubstantiated conjecture, insufficient to raise a *genuine* issue of material fact for trial.  Hewitt, 2012 U.S. Dist. LEXIS 141067, *18 (emphasis in original) (citation omitted).

Second, "[A] person is guilty of conspiracy in the first degree when, with intent that conduct constituting a class A felony be performed, he, being over eighteen years of age, agrees with one or more persons under 16 years of age, to engage in or cause the performance of such conduct." N.Y.P.L. § 105.17.  Conspiracy in the second degree carries the same requirements but has no age limit attached.  N.Y.P.L. § 105.15.

"New York courts have recently clarified that the illicit agreement need not have been made directly between one conspirator and an individual under the age of 16 to satisfy the elements for Conspiracy in the First Degree."  Hewitt, 2012 U.S. Dist. LEXIS 141067, *31. "'Indeed, a conspirator is guilty of the First Degree offense if he not only is unaware of the age of the young conspirator, but does not even know of that individual's existence'."  Id. (quoting People v. Canales, 32 Misc. 3d 1211[A] (Table)).  See also People v. Ackies, 79 A.D.3d 1050 (2d Dep't 2010) (reversing dismissal of First Degree Conspiracy counts in case involving the co-indictees in Lightning Strikes Twice).  "Once an illicit agreement is shown, the overt act of any conspirator may be attributed to other conspirators to establish the offense of conspiracy, and that may be the object crime."  Hewitt, 2012 U.S. Dist. LEXIS 141067, *31-32 (quoting People v. McGee, 49 N.Y.2d 48, 57 (1979) (emphasis added)).  Accordingly, plaintiff's claim that he

never sold drugs on January 25, 2006, or on any other day, and that he never "entered into an agreement, tacit or otherwise, to sell cocaine to anyone" is "without legal significance." Id.

Here, it was reasonable for Defendants to believe that plaintiff was involved in an illicit agreement with Larry Bozeman (and others) to sell narcotics, since U/C #2570 identified plaintiff as the individual who sold him crack cocaine inside of Bozeman's apartment, and Bozeman was a subject of the investigation. See id. at *30 (citation omitted).  The act of selling crack cocaine to U/C #2570 was the overt act in furtherance of the conspiracy.  Moreover, the illicit agreement was bolstered by the information provided by the CI to ADA Rios – that plaintiff was part of group of individuals who sold drugs in the front section of Cypress Hills Houses.  Notably, the CI's information was corroborated by the fact that the January 25, 2006 sale took place in the front section of the development.

It is also undisputed that U/C #2570 purchased narcotics from a juvenile on more than six occasions. See Exhibit T to Haber Decl. Thus, Defendants were aware that a juvenile was involved in this conspiracy as well.  In addition, many of the co-indictees were charged with numerous Class A felonies as a result of the Lighting Strikes Twice operation, and Defendants were aware of same.  See generally, Felony Complaint, dated April 27, 2007, annexed to the Haber Decl. as "Exhibit V;" Indictment No. 10116/07, Haber Decl., at Exhibit X.  Thirty-two of the 36 individuals indicted with plaintiff were convicted or pleaded guilty.  Defs. 56.1 at ¶ 63. Since the acts of any of plaintiff's co-conspirators may be attributed to him to establish the offense of conspiracy, and there was an overt act in furtherance of an illicit agreement, there was probable cause to prosecute plaintiff on the conspiracy charges.  See Hewitt, at *32.

Third, "…the distinction between probable cause to arrest and to prosecute only assumes importance when new information comes to light in the hours or days between the arrest

and prosecution." <u>Williams</u>, 2012 U.S. Dist. LEXIS 21729, *19.  Plaintiff has not adduced any evidence to show that there was any change in the information available to Defendants between the time he was arrested and time he was indicted that would have vitiated probable cause.

In light of the foregoing, there was probable cause to prosecute plaintiff for each of the crimes charged in the indictment, and accordingly, plaintiff's malicious prosecution claim fails as a matter of law.

**B.      Plaintiff Cannot Overcome the Presumption of Probable Cause Created By the Indictment**

A grand jury indictment creates a presumption of probable cause.  <u>Savino</u>, 331 F.3d at 72.  If plaintiff is to succeed in his malicious prosecution action after he has been indicted, it is his burden to show that "the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." <u>Manganiello</u>, 612 F.3d at 161-62.  Plaintiff must "establish what occurred in the Grand Jury and…further establish that those circumstances warrant a finding of misconduct sufficient to erode the premise that the Grand Jury acts judicially." <u>Rothstein</u>, 373 F.3d at 284.  Plaintiff simply cannot meet his burden.

Plaintiff's burden is not met by "alleged failure to conduct further investigation or apply all procedures that could have been followed." <u>Gil v. County of Suffolk</u>, 590 F. Supp. 2d 360, 370 (E.D.N.Y. 2008).  "Further, a plaintiff's own testimony is insufficient to rebut the presumption of probable cause arising from a grand jury indictment." <u>Nnodimele v. Derienzo</u>, 13 CV 3461 (ARR) (RLM), 2016 U.S. Dist. LEXIS 9881, *21 (E.D.N.Y. Jan. 27, 2016) (internal quotations and citation omitted); <u>Peterson v. Regina</u>, 935 F. Supp. 2d 628, 243 (S.D.N.Y. 2013) ("Where a plaintiff's only evidence to rebut the presumption of the indictment is his version of events, courts have found such allegations insufficient to rebut the presumption of probable cause") (internal quotations and citation omitted).  "Instead, the Second Circuit has set forth a

'competing testimony plus' standard to assess whether a plaintiff sufficiently rebutted the presumption of probable cause." Nnodimele, 2016 U.S. Dist. LEXIS 9881, *22 (quoting Brandon v. City of New York, 705 F. Supp. 2d 261, 273 (S.D.N.Y. 2010)). "The 'plus factor' consists of evidence corroborating the plaintiff's story and suggesting misconduct in the procurement of the indictment." Id. (quoting Maldonado v. City of New York, 11 Civ. 3514, 2014 U.S. Dist. LEXIS 26239, *25 (S.D.N.Y. Feb. 26, 2014)).

In the instant case, not only was plaintiff indicted by the Grand Jury, but on April 14, 2008, Justice Chun of the Kings County Supreme Court issued a written opinion stating that the evidence against plaintiff was legally sufficient to establish all of the offenses charged.  Defs. 56.1 at ¶ 58.  To the extent plaintiff is attempting to overcome this presumption by asserting that Defendants testified falsely before the Grand Jury, the Supreme Court's decision in Rehberg v. Paulk, 132 S. Ct. 1497, 1505-10 (2012), easily disposes of plaintiff's argument.  The Court in Rehberg considered whether a law enforcement agent could be sued under §1983 for both conspiring to give, and in fact giving, false testimony before a Grand Jury.  Ultimately, the Rehberg Court concluded that law enforcement witnesses who testify before a grand jury are immune from suit for having done so, clearly prohibiting a §1983 plaintiff from rebutting the presumption of probable cause established by an indictment with evidence that an officer lied to the grand jury.  Id. at 1506; see also Coggins v. Buonora, 776 F.3d 108 (2d Cir. 2015) (stating that "if the [plaintiff's §1983] claim requires the grand jury testimony, the defendant enjoys absolute immunity under Rehberg"); Hewitt, 2012 U.S. Dist. LEXIS 141067, *27.  Here, plaintiff is armed with nothing more than conclusory allegations that Defendants lied in a grand jury proceeding, and for this reason alone, the malicious prosecution claim against Defendants must be dismissed.

Plaintiff does not, and cannot, provide the Court with any evidence whatsoever to support any allegation that the indictment was procured by fraud or other police conduct undertaken in bad faith.  Accordingly, the presumption stands unchallenged and the indictment establishes probable cause for plaintiff's prosecution.

In light of the foregoing, Defendants respectfully contend that plaintiff has failed to rebut the presumption of probable cause created by the indictment, and accordingly, summary judgment is warranted.

**C.       Plaintiff Failed to Establish that Defendants Initiated the Prosecution**

Plaintiff's claim for malicious prosecution must also be dismissed because Defendants did not initiate the prosecution.  "One who does no more than disclose to a prosecutor all material information within his knowledge is not deemed to be the initiator of the proceeding." Rohman, 215 F.3d at 217.  However, "[w]hile police officers do not generally commence or continue criminal proceedings against defendants, a claim for malicious prosecution can still be maintained against a police officer if the officer is found to play an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." Bermudez v. City of New York, 790 F.3d 368, 377 (2d Cir. 2015) (quotations and citations omitted).

Here, plaintiff adduced no evidence during discovery to show that the individually-named defendants initiated or played an active role in the prosecution.  It is undisputed that Detective Dauge was the alternate case detective, that Sergeant Ramirez was Detective Cooke's supervisor, and that Sergeant Chiodi was the assigned Arresting Officer on April 25, 2007, but plaintiff has not submitted any evidence to show what role, if any, any of them had in plaintiff's prosecution.

20

In addition, while U/C #2570 informed Detective Cooke that an individual identified as "JD Hood" sold him crack cocaine on January 25, 2006, provided Detective Cooke with reports, and identified plaintiff as "JD Hood" on numerous occasions, all of which provided probable cause to arrest and prosecute, not only were these actions taken as part of the pre-arrest police investigation, but "the chain of causation between a police officer's….arrest and a subsequent prosecution was broken by the intervening exercise of independent prosecutorial judgment." Hewitt, 2012 U.S. Dist. LEXIS 141067, *25 (quoting Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999)).

While it is also undisputed that U/C #2570 testified before the grand jury regarding plaintiff, which would also entitle him to absolute immunity, "absent a sworn complaint or evidence…"to raise the reasonable inference that [he] forwarded false or misleading information to the KCDA to influence their otherwise independent charging discretion, [U/C #2570] did not initiate the prosecution against plaintiff." Id. at *26-28 [emphasis added].  As set forth in Points II(a) and (b) supra, there is no evidence in the record that U/C #2570 or Detective Cooke intentionally fabricated any evidence against plaintiff, or misled the KCDA in any way.  Accordingly, plaintiff cannot show that U/C #2570 or Detective Cooke initiated the prosecution, and summary judgment is warranted in their favor as well.

**D.  Plaintiff Failed To Establish That Defendants Acted With Malice**

Aside from the reasons set forth above in Points II(a) through (c) supra, plaintiff's malicious prosecution claim should also be dismissed because the record is completely devoid of evidence to show that Defendants acted with malice.  "Under New York law, malice does not have to be actual spite or hatred, but means only that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the

ends of justice served."  Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996) (quotation and citation omitted). While malice may be inferred from lack of probable cause, that is not the case here, as there was probable cause to prosecute plaintiff as a matter of law. Plaintiff has relied on mere conjecture and surmise to support his allegations of improper motive. This is insufficient to defeat summary judgment.

### E.  The Prosecution Was Commenced By the KCDA

Finally, plaintiff's claim fails because it is undisputed that it was KCDA's independent decision to prosecute plaintiff based on facts which were not exclusively obtained from Defendants.  Indeed, ADA Rios testified that KCDA's decision to prosecute was based not only on the information provided by U/C #2570 but also on testimony provided by a CI.  "New York law imposes a presumption that a prosecutor exercises his own independent judgment in deciding to prosecute a criminal defendant."  Gilman v. Marsh & McLennan Cos., Inc., 868 F. Supp. 2d 118, 128 (S.D.N.Y. 2012) (citation omitted).  Thus, "'once a criminal defendant has been formally charged, the chain of causation between the officer's conduct and the claim of malicious prosecution is broken by the intervening actions of the prosecutor, thereby abolishing the officer's responsibility for the prosecution.'"  Jouthe v. City of New York, 05 CV 1374 (NGG), 2009 U.S. Dist. LEXIS 18163, *35 (E.D.N.Y. Mar. 10, 2009) (citation omitted); Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999).

Further, "if there is a superseding cause for the indictment, a defendant may not be liable for malicious prosecution."  See Bertuglia v. City of New York, 133 F. Supp. 3d 608, 630 (S.D.N.Y. 2015) (citing Townes, 176 F.3d at 147 (other citations omitted).  While there is an exception for a defendant who has fabricated evidence or provided false testimony, "those statements must have been the proximate cause of the prosecution."  Id. at *47-48.  Here, the

evidence in this case shows that Defendants were not the proximate cause of the prosecution. Rather, ADA Rios decided to prosecute plaintiff based upon her independent examination of the evidence, and the information provided by the CI.  Thus, her independent decision was the superseding cause of plaintiff's prosecution.

In light of the foregoing, Defendants respectfully contend that plaintiff's malicious prosecution claim fails as a matter of law, and should be dismissed in its entirety.

## POINT III

### DEFENDANTS ARE ENTITLED TO QUALIFED IMMUNITY

Defendants are entitled to the protection of qualified immunity. Qualified immunity is "an immunity from suit rather than the mere defense to liability and is effectively lost if the case is erroneously permitted to go to trial."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  The question of qualified immunity is independent of the merits of the underlying action and must be examined independent of the underlying claims.  Saucier v. Katz, 533 U.S. 194, 204 (2001).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).  The purpose of qualified immunity is to protect government employees from civil liability where performance of their discretionary functions "does not violate clearly established statutory or constitutional rights of which a reasonable person should have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1992).  "The standard for qualified immunity from a malicious prosecution claim is the same as that for false arrest: an arresting officer 'is entitled to qualified immunity if (a) it was objectively reasonable for the officer to believe that probable cause existed or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" Ullah v. Office of the

Dist. Attorney, 07 CV 2687, 2009 U.S. Dist. LEXIS 61607, at *10 (S.D.N.Y. July 20, 2009) (quoting O'Neill v. Town of Babylon, 986 F.2d 646, 649-50 (2d Cir. 1993)).

In addition, as set forth in Point II, supra, it was reasonable for Defendants to believe there was probable cause to prosecute plaintiff for each of the crimes charged in the indictment.  At the very least, there was arguable probable cause.  In the event the Court should find plaintiff was able to overcome the presumption of probable cause created by the indictment, Defendants would still be entitled to qualified immunity because reasonable officers could at least disagree about whether probable cause to prosecute existed based on the information provided by U/C #2570 and the CI.  Moreover, the law regarding the crime of conspiracy in the first degree was not "clearly established" at the time of arraignment.  See Hewitt, 2012 U.S. Dist. LEXIS 141067, at *31-32, fn. 11 (discussing the law of conspiracy in the first degree and noting that "…Cooke would be protected by qualified immunity as the required elements for conspiracy in the first degree in New York was not 'clearly established' at the time of Cooke's charging decision") (citing Camreta v. Greene, 131 S.Ct. 2020, 2031 (2011)).  Accordingly, Defendants respectfully contend that each of the defendants are entitled to qualified immunity.

**POINT IV**

**PLAINTIFF DOES NOT ALLEGE ANY CLAIMS AS AGAINST THE CITY**

A municipality may only be held liable under §1983 when the municipality's official policy or custom causes the injury. Monell v. Dep't of Social Servs., 436 U.S. 658, 694-95 (1978).  To establish municipal liability, plaintiff must allege facts "beyond mere employment of the government actor." Jean v. City of New York, 08 CV 0157 (RER), 2009 U.S. Dist. LEXIS 98239, *27 (E.D.N.Y. Oct. 22, 2009) (citing Jeffes v. Barnes, 208 F.3d 49, 61 (2d Cir. 2000)).

24

Plaintiff does not allege any claims whatsoever as against defendant City. See generally, Am.

Compl. Accordingly, summary judgment is warranted in its favor.

## POINT V

## THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMETNAL JURISDICTION

For the reasons set forth in Points I through IV, supra, Defendants respectfully

request that in the event plaintiff's federal claim of malicious prosecution is dismissed, any

corresponding state law claim be dismissed as well. Moreover, to the extent plaintiff's state law

claim should survive summary judgment, Defendants respectfully request that the Court decline

to exercise supplemental jurisdiction over it.

## CONCLUSION

For the foregoing reasons, defendants City of New York, Undercover Police

Officer #2570, Detectives Christopher Cooke and Vincent Dauge, and Sergeants Claudio

Ramirez and Frank Chiodi respectfully request that the Court grant their motion for summary

judgment and dismiss the action in its entirety, with prejudice, together with such other and

further relief as the Court deems just and proper.

Dated:      New York, New York
               July 15, 2016

                                     ZACHARY W. CARTER
                                     Corporation Counsel of the City of New York
                                     *Attorney for Defendants*
                                     New York, New York 10007
                                     212.356.3545

                                     /s/
By:                     _____
                                     Erica M. Haber
                                     Senior Counsel
                                     Special Federal Litigation Division

To:     Harold Baker, Esq.
        *Attorney for plaintiff*
        32 Court Street, Suite 507
        Brooklyn, New York 11201
        718.858.7927
        (*via ECF and first class mail*)

Docket No. 12 CV 3018 (AMD) (VMS)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CARL GOODLOE,

Plaintiff,

-against-

THE CITY OF NEW YORK, UNDERCOVER PLICE
OFFICER #2570, DETECTIVE COOKE, DETECTIVE
DAUGE, SARGEANT RAMIREZ, PLICE OFFICER
FRANK CHIODI, AND JOHN DOE POLICE
OFFICERS 1-5 of the NEW YORK CITY POLICE
DEPARTMENT,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT**

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York*
*100 Church Street - Room 3-159*
*New York, New York 10007*

*Of Counsel: Erica M. Haber*
*Tel: (212) 356-3545*
*Matter No. 2012-029273*

*Due and timely service is hereby admitted.*

*New York, N.Y.* ............................................................., 2016......

................................................................................. , *Esq.*

*Attorney for*.....................................................................................