12-CV-3018    (AMD)(VAS)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CARL GOODLOE,

                                Plaintiff,

THE CITY OF NEW YORK,
UNDERCOVER POLICE OFFICER #2570,
DETECTIVE COOK, DETECTIVE DAUGE,
SARGEANT RAMIREZ, POLICE OFFICER
FRANK CHIODI, AND JOHN DOE POLICE
OFFICERS 1-5 of the NEW YORK CITY
POLICE DEPARTMENT,

                                Defendants.

_____


_____


**PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT**

_____

**HAROLD C. BAKER, ESQ.**
*Attorney for the Plaintiff*
*32 Court Street, Suite 507*
*Brooklyn, NY 11201*
*718-858-7927*


October 3, 2016

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES......................................................................... iii

PRELIMINARY STATEMENT.......................................................................1

STATEMENT OF FACTS.............................................................................2

       September 2, 2005 False Arrest of Plaintiff.................................2

       Lightning Strikes Twice And January 25, 2006 Buy
       Operation Involving Mr. Hood........................................................3

       Alleged Recognition Of Hood As Subject Of January 25,
       2006 Transaction By U/C2570 And Of Hood As Plaintiff
       By Cooke On November 30, 2006................................................6

       The Identification Procedures.......................................................8

       Plaintiff's April 25, 2007 Arrest....................................................9

       Defendants Cooke and U/C 2570 initiated the
       prosecution of Plaintiff.................................................................9

       The Confidential Informant........................................................10

       Malicious Prosecution of Plaintiff by Defendants......................11

       Indictment 10116/07..................................................................13

       Dismissal of Indictment 10116/07.............................................13

LEGAL ARGUMENT..................................................................................14

    POINT 1

       PLAINTIFF HAS ESTABLISHED A CLAIM FOR MALICIOUS
       PROSECUTION........................................................................14

       A.  Defendants U/C2570 and Cooke initiated the prosecution...............15

       B.  The District Attorney's Decision to Prosecute Plaintiff
       is Not a Superseding Cause.............................................17

**Page**

C.  The Proceeding Was Terminated in Plaintiff's Favor......................17

D.  Defendants Lacked Probable Cause For
    Commencing the Proceeding...........................................................17

E.  Actual Malice as a Motivation for Defendant's Actions..................23

F.  Independent Evidence Corroborating That Plaintiff
    Did Not Sell Drugs Is Not Required................................................24

G.  Defense Reliance on Confidential Informant..................................24

POINT II

    DEFENDANTS ARE NOT ENTITLED TO QUALIFIED
    IMMUNITY............................................................................... 27

CONCLUSION...............................................................................29

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Pages**

Anderson v. Creighton,
483 U.S. 635 (1987)...............................................................................................................28

Bermudez v. City of New York,
790 F. 2d 368 (2d Cir. 2015)...............................................................................................17

Boyd v. City of New York,
336 F. 3d 72 (2d Cir. 2003)..................................................................................................20

Bullard v. City of New York,
240 F.Supp. 2d 292 (SDNY 2003).......................................................................................14

Cameron v. City of New York,
598 F. 3d 50 (2d Cir. 2010)............................................................................................15, 17

Carbajal v. Count of Nassau,
02 cv. 4270 2003 WL 23138447 (EDNY Dec. 22, 2003)......................................................26

Chevron Corp. v. Donziger,
11 Cv. 0691 (LAK)(JCF), 2013 WL 4045326 (SDNY Aug. 9, 2013).....................................25

Colon v. City of New York,
60 N.Y.2d 78, 82-83, 468 N.Y.S. 2d 453,455N.E.2d 1248
(N.Y.1983)……………………………………………………........................14, 15, 18, 21

Creighton v. City of New York,
12 Civ. 7454 (PGG), 2015 WL 8492754 (SDNY Dec. 9, 2015)............................................26

Dinler v. City of New York ("In Re City of New York"),
607 F.3d 923, 941 (2d Cir. 2010)....................................................................................25, 26

Freedman v. Weatherford,
2014 WL 3767034 (SDNY July 25, 2014)............................................................................25

Goodloe v. City of New York,
136 F. Supp. 3d 283 (EDNY 2015).......................................................................................26

Hewitt v. City of New York,
09 cv 0214 (RJD), 2012 U.S. Dist. LEXIS 141067
(EDNY Sept. 27, 2012), aff'd 544 Fed Appx. 24 (2d Cir. 2013)............................................22

**Cases**         **Pages**

Higazy v. Templeton,
505 F.3d 161 (2d Cir. 2007)......................................................................27

In re County of Erie,
546 F. 3d 222 (2d Cir. 2008).....................................................................25

In re Sims,
534 F. 3d 117 (2d Cir. 2008).....................................................................27

Koumoulis v. Independent Financial Marketing Group, Inc. Eyeglasses,
295 F.R.D. 28 (EDNY 2013)......................................................................25

Laxalt v. McClatchy,
116 F.R.D. 438 (D. Nev. 1987)..................................................................26

Lowth v. Town of Cheektowaga,
82 F. 3d 563 (2d Cir. 1996)................................................................15, 21

Manganiello v. Agostini,
2008 WL 5159776; No. 07 Civ.3644 (HB),
Dec. 9, 2008 (Not reported in F. SUPP. 2d (2008))..............................18, 23

Manganiello v. City of New York,
612 F.3d 149, 160-61 (2d Cir. 2010)………................................14, 18, 20

Matthews and Alan v. the City of New York, et. al.,
2012 WL 3839505...............................................................13, 18, 20, 27

Mazzella v. Phila. Newspapers, Inc.,
479 F. Supp. 523 (EDNY 1979).................................................................26

Mejia v. City of New York,
119 F.Supp 2d 232 (EDNY 2000)..............................................................16

Meyers v. County of Orange,
157 F. 3d 66 (2d Cir. 1998).......................................................................17

Michele v. City of New York,
09 CV 9334, 2013 WL 4354763 (SDNY September 12, 2012)...................29

Murphy v. Lynn,
18 F. 3d 938 (2d Cir. 1997).......................................................................14

**Cases**                                                                   **Pages**

Nieman v. Whalen,
911 F.Supp. 656, 668-69 (SDNY 1996), aff'd. 107 F.3d 3 (2d Cir.1997)………….............20

Obeid v. LaMack,
14 cv 6498 (LTS)(MHD), 2015 WL 5581577 (SDNY Sept. 16, 2015).....................................25

Okin v. Village of Cornwall-On-Hudson Police Dep't,
577 F. 3d 415 (2d Cir. 2009).......................................................................................................28

Pearson v. Callahan,
555 U.S. 223, 129 SCt. 808, 172 L.E. 2d 565 (2009).................................................................29

People v. Goggins,
34 N.Y.2d 163 (NY 1974)...........................................................................................................26

Pinsky v. Duncan,
79 F. 3d 306 (2d Cir. 1996).........................................................................................................23

Ramos v. City of New York,
285 AD2d 284 (1st Dept., 2001).................................................................................................15

Reeves v. Sanderson Plumbing,
530 U.S. 133, 150-151 S.Ct. 2097, 147 L.Ed.2d 105 (2000)……………………......................14

Ricciuti v. New York City Transit Authority,
124 F.3d 123, 131 (2d Cir. 1997)………………………………………………...........15, 16, 20

Richards v. City of New York,
433 F. Supp. 2d 404 (SDNY 2006)............................................................................................28

Richardson v. City of New York,
No. 02 CV 3651, 2006 WL 2792768,  (EDNY Sept. 27, 2006)……………….......18, 20, 21, 24

Rothstein v. Carriere,
373 F. 3d 275, 282-83 (2d Cir. 2004)………………….............................................................18

Russo v. DiMilia,
894 F. Supp. 2d 391 (SDNY 2012)............................................................................................29

Sanders v. City of New York,
2015 U.S. Dist. LEXIS 42698....................................................................................................19, 20

**Cases**                **Pages**

Saucier v. Callahan,
533 U.S. 194, 121 SCt 2151, 150 L. Ed. 2d 272 (2001)...........................................29

Savino v. City of New York,
331 F. 3d 63 (2d Cir. 2003)..................................................................................18, 19

Toliver v. City of New York,
10 CV 5803, 2012 WL 6013098 (SDNY December 3, 2012)...................................29

Torres v. Jones,
26 N.Y. 3d 742 (2016)...............................................................................................15

United States v. Saa,
859 F.2d 1067 (2d Cir. 1988)....................................................................................29

Zellner v. Summerlin,
494F.3d 344, 370 (2d Cir. 2007)…………………………….....................................14

**Statutes**

Local Rule 56.1...........................................................................................................2

NYPL § 105.15............................................................................................................9

NYPL § 220.16(1).......................................................................................................9

NYPL § 220.39(1).......................................................................................................9

NYPL § 220.06(5).......................................................................................................9

NYPL § 220.03............................................................................................................9

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

CARL GOODLOE,

                              Plaintiff,                    12-CV-3018 (AMD)(VAS)

          -against-

THE CITY OF NEW YORK,
UNDERCOVER POLICE OFFICER #2570,
DETECTIVE COOKE, DETECTIVE DAUGE,
SARGEANT RAMIREZ, POLICE OFFICER
FRANK CHIODI, AND JOHN DOE POLICE
OFFICERS 1-5 of the NEW YORK CITY
POLICE DEPARTMENT,

                              Defendants.

-----------------------------------------------------------X

## **PRELIMINARY STATEMENT**

          Defendants' motion for summary judgment should be denied because, on the record here, a

reasonable jury can conclude that defendants initiated a prosecution without probable cause in

retaliation for a civil lawsuit plaintiff successfully prosecuted.   A jury can conclude that

defendants manufactured evidence against plaintiff for selling drugs on January 25, 2006 and for

participating in a conspiracy to sell drugs.  In addition to plaintiff's prior suit against Detective

Christopher Ward and defendants U/C 2570, Detective Cooke and other police officers working in

the unit involved here, the City's policy of promoting its undercover investigators based on the

number of buys they make and the number of arrests they generate created an additional and

improper incentive for U/C 2570, Cooke, and others to falsely charge plaintiff.

**STATEMENT OF FACTS**

**September 2, 2005 False Arrest Of Plaintiff**

Defendant Undercover Officer U/C 2570 (hereinafter "UC 2570"), was assigned to Brooklyn North Narcotics District (hereinafter "BNND"), in approximately May, 2005.  See Plaintiff's Statement of Material Facts Pursuant to Local Civil Rule 56.1, dated September 21, 2016 (hereinafter "P.'s 56.1"), ¶ 7.  Undercover officers are promoted in the BNND based on the number of buys and the number of arrests they generate.  See  P.'s 56.1 at ¶ 4.

Between approximately September, 2005 and April 2007 U/ C 2570 worked with and became friends with defendant Cooke, Ramirez, Chiodi and non parties Sergeant Jones, Detective King, P.O. Balsamo and Detective Christopher Ward, all of whom U/C 2570 relied on for his personal safety during field operations.  Id.  at ¶ 1.

On September 2, 2005, plaintiff was arrested in the vicinity of Blake Street and Logan Avenue in Brooklyn and charged with selling cocaine.  Defendant U/C 2570 and non-parties Detective Christopher Ward, Detective Michelle King, Sergeant Jones and Officer Balsamo were all part of the team that conducted the buy operation that day that resulted in plaintiff's arrest.  Detective King described plaintiff as '6"1, 270 pounds with long dread locks.  Id. at ¶ 1.

This buy operation was part of an investigation called the "Narcotics Plan."  Detective Cooke was a lead investigator in the Narcotics Plan.   Id at ¶6.  Although Cooke was not present for plaintiff's arrest, a sergeant asked him to complete some paperwork relating to plaintiff's September 2005 arrest for processing and tracking.  See Cooke Dep., "Exhibit C" to the Baker Decl., p. 27:23-p.28:23.

Cooke was also friends with and worked with U/C 2570, Detective Christopher Ward, Detective Mechelle King, Sergeant Jones and P.O. Balsamo.  Id. at ¶ 6.

2

Subsequent to his arrest on September 2, 2005, all charges against plaintiff were dropped. See copy of complaint in the case of Goodloe v. the City of New York et. al, CV-05-4336 paragraphs 21- 28, annexed to the Haber Decl. as Exhibit "CC."

Thereafter, plaintiff brought an action in Federal Court for false arrest and related claims against the City of New York, Officer Christopher Ward and John Doe officers whose identities, at that time, were unknown to plaintiff,  but who are now known to be Defendant U/C 2570, Defendant Detective Cooke and non parties Detective Mechelle King, Sergeant Jones, and P.O Balsamo, all of whom also participated in the Lightning Strikes Twice investigation and the malicious prosecution of plaintiff for sale of drugs and conspiracy under Kings County Indictment # 10116/07.   Id., Defendants' response to Plaintiff's interrogatories, "Exhibit A" to the Baker Decl., Cooke Dep., "Exhibit C" to the Baker Decl., p. 10:17-p.11:9, p. 22:8-p.24:23, p. 26:17-p. 28:3.

On January 12, 2006, the City of New York issued a check payable to plaintiff in the amount of $22,500.00 to resolve his false arrest claim from the September 2. 2005 arrest.  See copy of check dated January 12, 2006, "Exhibit F" to the Baker Decl.

 The Narcotics Plan investigation, of which plaintiff's September 2, 2005 arrest was part of, was switched to the Lightning Strikes Twice investigation at the Cypress Hills Project.  See P.'s 56.1 at ¶6.

### Lightning Strikes Twice And January 25, 2006 Buy Operation Involving Mr. Hood

On January 25, 2006, as part of the Lightning Strikes Twice investigation, U/C 2570 went to 305 Fountain Avenue, the apartment of co-conspirator Larry Bozeman, to make a purchase of cocaine.  Defendants Detectives Cooke and Dauge and non parties Detective King,

Sergeant Jones, and Officer Balsamo were all members of the field team for U/C 2570's purchase of cocaine from Mr. Hood.  See  U/C 2570 Buy Report, "Exhibit L" to the Haber Decl.

Bozeman introduced U/C 2570 to a man Bozeman named Mr. Hood who was sitting in Bozeman's living room.  See U/C Dep., "Exhibit B" to the Baker Decl., p. 90:13-21, p. 93:14-p.95:3, p.99:18-21.

The transaction took about ten to fifteen minutes.  However, U/C 2570 did not get a good look at Mr. Hood because to avoid blowing his cover, U/C 2570 did not stare at Mr. Hood or try to remember his face.  See U/C Dep., Id., p. 83:21-84:8.

U/C 2570 did not record the description of Mr. Hood until later on that day back at the base when he filled out a buy report, solely from memory, that included a myriad of information besides the description of Mr. Hood.  Id. at79:6-82:21, 69:10-72:15.

U/C 2570 described Mr. Hood in his Buy Report as a male black, 20-25 years old, approximately '5 "8 to '5 "11, approximately 190 pounds, wearing a black hat, black ¾ length jacket, black jeans and black boots.  See U/C 2570 Buy Report, "Exhibit L" to the Haber Decl.

Besides this very generic description, U/C 2570 recorded no description of the nose, eyes, ears, complexion, hair style, hair length, facial or head shape, or whether or not Mr. Hood had any facial hair, scars or tattoos, or had any features that would reasonably assist someone in credibly recognizing and accurately identifying the subject later on.  Id. at p. 29:7-p. 30:6.

Plaintiff did not fit this description.  On September 2, 2005, non-party Detective King described plaintiff as:  20 years old, 6 foot 1 inch tall, and 270.  See Omniform Arrest report, "Exhibit BB" to the Haber Decl.

4

On February 27, 2007, Detective Cooke described plaintiff in a stop and frisk report as:   22 years old, 5 foot 10 inches tall, 240 pounds, brown eyes, heavy build.  <u>See</u> stop and frisk report "Exhibit P" to the Haber Decl.)

When plaintiff was arrested on April 25, 2007, he was described as 22 years of age, 6 feet in height, and weighing 250 pounds.  <u>See</u> P.O. Naughton's Omniform Arrest report dated April 25, 2007, "Exhibit R" to the Haber Decl.

Thus, plaintiff was a few inches taller and between 50 and 80 pounds heavier than the person who U/C 2570 described as Hood on January 25, 2006.  <u>See</u> U/C Dep., "Exhibit B" to the Baker Decl., p. 63:10-p. 65:4, 79:6-82:21, Cooke's dep. "Exhibit C" to the Baker Decl., p. 63:10-p. 65:4;

U/C 2570 gave inconsistent testimony at his deposition about having recognized Mr. Hood on January 25, 2006 as the person involved in the September 2, 2005 buy.  <u>See</u> P.'s 56.1, ¶'s 17(a), (b).

Significantly, neither U/C 2570 or Detective Cooke made any attempt to learn more about Mr. Hood by tracing Mr. Hood's name.  Moreover, there is no evidence in the record that U/C 2570 ever told anyone prior to his deposition on July 18, 2014 that the name "Hood" was the actual name of the person that sold him drugs on January 25, 2006 as opposed to merely a "JD name." <u>See</u> P.'s 56.1 ¶ 17 (i).

Furthermore, neither U/C 2570 or Detective Cooke made any attempt to locate and identify Hood by using his name or his telephone number, by matching Hood's telephone number to plaintiff's cellular telephone number, or by speaking to his colleagues and friends about Hood.  <u>See</u> P.'s 56.1 ¶ 17 (i), (j) and (k).

No arrest was made on January 25, 2006, as the buy from "Hood" was ostensibly part of a massive investigation into drug sales at the Cypress Hills Public Housing complex.  The investigation being conducted by the BNND of the Cypress Hills houses involved in thirty-six suspects, hundreds of case buys and lasted nearly two years.  See ¶'s 4 and 63 of Defendants' 56.1 Statement.    Thus, Mr. Hood remained unidentified and a lost subject.

Mr. Hood is not alleged to have made any other sales at all during the remainder of the investigation and is not mentioned again in the investigation until November 30, 2006.

Plaintiff denies he was the person who sold cocaine to  U/C 2570 on January 25, 2006 and who U/C 2570 referred to as Mr. Hood.  Plaintiff has never met or spoken to Larry Bozeman, does not know Bozeman and has never been inside 305 Fountain Avenue, apartment 7A. See Plaintiff's Dep., "Exhibit F" to the Baker Decl., p. 86:14-p. 89:20 and p. 132:16-20.

### Alleged Recognition Of Hood As Subject Of January 25, 2006 Transaction By U/C 2570 And Of Hood As Plaintiff By Cooke On November 30, 2006

On November 30, 2006, ten months after JD Hood sold U/C 2570 cocaine inside Larry Bozeman's apartment, U/C 2570 was walking with Mr. Bozeman from Bozeman's apartment at 305 Fountain Avenue to 345 Fountain Avenue when U/C 2570 claims they ran into a man he recognized as Hood.  U/C 2570's account of where this encounter took place is inconsistent.  U/C 2570 wrote in his Buy Report that he and Bozeman saw Mr. Hood on Blake Avenue.  At his deposition, however, U/C 2570 testified that he and Bozeman encountered Mr. Hood in a courtyard located between 305 and 345 Fountain Avenue, not on Blake Avenue.   Blake Avenue is proximally remote from 345 Fountain Avenue.  The shortest and quickest way to get from 305 Fountain Avenue to 345 Fountain Avenue would be to walk through the inner courtyard that connects the two buildings.  See P.'s 56.1 ¶'s 16-17.

6

The person U/C 2570 saw in the court yard while walking with Bozeman on November 30, 2006 was not plaintiff. See P.'s 56.1, ¶ 4.   The recognition of plaintiff by U/C 2570 on November 30, 2006 as Mr. Hood is inconsistent with the evidence and is incredible.  See P.'s 56.1, ¶ 's 13, 16, 17.

Defendant Cooke's story that on November 30, 2006 he saw U/C 2570 walking southbound on Fountain Avenue, turn right and walk west to the corner of Blake and Logan Streets and interact with Mr. Hood and that he recognized Mr. Hood as plaintiff is contradicted by U/C2570's testimony that on November 30, 2006, he and Bozeman walked *from* 305 Fountain Avenue *to* 345 Fountain Avenue and that the encounter with Mr. Hood took place in the courtyard between the two buildings, not on Blake Avenue.   (Emphasis added).  <u>See</u> P.'s 56.1 ¶'s 16, 19, Cooke's November 30, 2006 DD5, "Exhibit M" to the Haber Declaration, U/C dep., "Exhibit B" to the Baker Decl., p.147:20- p. 149:22, p. 152:4-9, p. 182:4-14

Furthermore, Cooke's assertion that he was able to recognize the individual encountered by U/C 2570 and Bozeman on November 30, 2006 as plaintiff from prior encounters is inconsistent with; and undermined by, the evidence.  <u>See</u> P.'s 56.1 ¶ 21.

Furthermore, the record is devoid of any evidence as to how Cooke knew on November 30, 2006 that the name of the person he claims to have recognized was "Carl Goodloe."  Cooke had never arrested plaintiff before, had never seen him engaged in any criminal conduct, never had any direct contact with plaintiff, had not spoken to plaintiff, and claims the encounters with plaintiff were really only occasions when Cooke was speaking to other individuals and plaintiff just happened to be standing nearby.  <u>Id.</u>

Cooke never told ADA Rios about any prior encounters he allegedly had with plaintiff. <u>See</u> Rios dep., "Exhibit L" to the Baker Decl., p. 95:21-p.97:20.

## <u>The Identification Procedures</u>

In light of the extensive evidence that undermines U/C 2570's recognition of plaintiff as Mr. Hood on November 30, 2006, the identifications of plaintiff by U/C 2570 on December 5, 2006 in the photo array and on February 27, April 25 and 26, 2007 are also undermined and therefore exposed as fraudulent.  <u>See</u> P.'s 56.1 ¶'s 16-17.

In addition, on February 27, 2007, Instead of conducting a fair and non-suggestive line-up with plaintiff as the subject, as was done with other suspects in the investigation, the defendants conducted a suggestive "show up identification," that was not temporally close in time to the January 25, 2006 sale or the December 5, 2006 photo array identification.  <u>See</u> P.'s 56.1 ¶'s 30-32. The decision to conduct a show up as opposed to a line-up was all the more egregious given that U/C 2570 didn't get a good look at Mr. Hood during the January 25, 2006 sale, the description U/C 2570 wrote down of Mr. Hood was generic, plaintiff did not match the description of Mr. Hood, a significant amount of time had elapsed between the photo array and the February 27, 2007 stop, and U/C 2570 had engaged in numerous observations of subjects who were similar to Mr. Hood both as a primary undercover and as a ghost, in many different buy operations during the course of the investigation and there was no other evidence as of February 27, 2007 linking plaintiff to the January 25, 2006 sale or to participation in the conspiracy.  <u>See</u> P.'s 56.1 ¶17.

U/C 2570 identified JD Prince, another of his subjects who was very similar in appearance to plaintiff, on February 27, 2007, shortly before identifying plaintiff.  Despite the close proximity of the two identifications, the similarity between the two subjects and the sheer number of additional similar subjects and transactions U/C 2570 had to keep track of, he was somehow able to differentiate between the two on February 27, 2007.  <u>Id.</u>

Notably, U/C 2570 lied under oath at his deposition on July 18, 2014 when, while looking at a copy of the December 5, 2006 photo array he initially claimed he recognized a person in the photo array as the person who he had observed on September 2, 2005, more than 8 years earlier, even going so far to say he could recall where plaintiff was standing and what color shirt he had on. Id.  See also U/C Dep., Exhibit B" to the Baker Decl. p. 162:4-165:18, p. 103:7-p.104:2.

### Plaintiff's April 25, 2007 Arrest

 On 4/25/07, Officer Naughton and other officers forcibly seized plaintiff as he was driving his dad's 2003 Chevy Impala in the vicinity of Blake Avenue and Milford Street. Plaintiff was roughed up by the officers who seized him, strip searched and sent to court where bail was set and plaintiff remained incarcerated.  See P.'s 56.1 ¶'s 38, 39.

Plaintiff's cellular telephone and his car were seized by Naughton and vouchered by P.O. Chiodi.  See voucher for telephone, "Exhibit I" to the Baker Decl.

P.O. Chiodi instituted a fraudulent vehicle forfeiture action against plaintiff despite the fact that no narcotics were found in the car and there were never any allegations that plaintiff had engaged in any criminal activity relative to the car.  See Civil Forfeiture Complaint, See P.'s 56.1, ¶ 38, Verified Civil Forfeiture Complaint, "Exhibit R" to the Baker Decl.

### Defendants Cooke and U/C 2570 initiated the prosecution of Plaintiff

Following plaintiff's arrest, Detective Cooke worked with ADA Rios to prepare a criminal court complaint charging plaintiff with Conspiracy in the First and Second Degrees (NYPL§ 105.17 and 105.15 respectively), Criminal Sale of a Controlled Substance in the Third Degree (NYPL § 220.16 (1)), Criminal Possession of a Controlled Substance in the Third Degree (NYPL § 220.39(1)), Criminal Possession of a Controlled Substance in the Fifth Degree (NYPL § 220.06(5)),  and Criminal Possession of a Controlled Substance in the Seventh Degree (NYPL§

220.03) and using fraudulent information contained in U/C 2570's January 25, 2006 Buy Report,

the November 30, 2006 Buy Report and the information regarding U/C 2570's fraudulent

identifications of plaintiff on November 30, 2006 and on February 27, April 25 and April 26,

2007.  See P.'s 56.1 ¶'s 42, 45, 46 and 55.[1]  U/C 2570 and Cooke both subsequently testified

falsely before the grand jury about plaintiff's involvement in the January 25, 2006 sale, and with

respect to identifications made of plaintiff by U/C 2570.

### The Confidential Informant

Plaintiff did not sell drugs to U/C 2570 on January 25, 2006, and did not participate in the

conspiracy to sell drugs.  See Plaintiff's 50-H testimony, "Exhibit E" to the Baker Decl., p. 41:10-

18, p. 56:10-17, p. 75:5-24, p. 81:6-20, paragraphs 23, 29 and 48 of the Amended Complaint

"Exhibit B" to the Haber Decl., Plaintiff's Dep., "Exhibit F" to the Baker Decl., p. 75:20-25, p.

83:15-25, p. 84:20-24, p. 86:14- page 89:20.

Plaintiff disputes any information that the CI allegedly provided to Cooke and the KCDA

regarding plaintiff's involvement in the drug conspiracy.  Cooke's testimony regarding the CI is

inconsistent and lacks credibility See P.'s 56.1 ¶' 44.

Furthermore, although defendants cite information provided by the CI as a source of

probable cause to charge plaintiff with participating in the conspiracy and as a basis for their

defense to plaintiff's malicious prosecution claim, defendants  have refused to disclose to

plaintiff vitally important information about the CI, his/her alleged relationship with, or basis of

knowledge of plaintiff, and plaintiffs involvement in the conspiracy, the circumstances

---

[1] There is no admissible evidence in the record that During the course of the Lightning Strikes Twice investigation, U/C #2570 bought narcotics on approximately six occasions from at least one individual who was under the age of 16 years old on the dates of purchase, and informed Detective Cooke of same.   The evidence cited by defendants in their 56.1 statement to support the allegation that U/C 2570 bought narcotics from at least one person under the age of 16 years old on the dates of purchase constitutes inadmissible hearsay and Defendants should be precluded from relying on it by the Court.  See P.'s 56.1, ¶ 54.

surrounding the CI's reporting of such information to the defendants and the KCDA and the specific information allegedly provided by the CI, citing the law enforcement privilege.   See P.'s 56.1¶'s 44-53.

Neither plaintiff nor plaintiff's counsel personally possess any information to admit or deny that the CI became cognitively impaired, or when or under what circumstances, although counsel believes Magistrate Scanlon did review information provided by defense counsel about the CI's impairment and may have agreed to accept her conclusion that the CI was cognitively impaired.   See P.'s 56.1 ¶ 59

## **Malicious Prosecution of Plaintiff by Defendants**

Cooke and U/C 2570 both knew about the dismissal of the September 2 2005 case and plaintiff's subsequent lawsuit, especially in light of the fact that if Cooke did not know everything there was to know about the subjects of his teams' investigations, his bosses would take his head off.  See P.'s 56.1, ¶'s 19-21, 31, 32, 68-70, and 74.

U/C 2570's and Cooke's claims that they did not know about the dismissal of plaintiff's September 2, 2005 case and the subsequent lawsuit are incredible and inconsistent with the evidence.  Both Cooke and U/C 2570 worked on both the September 2, 2005 case and the January 25, 2006 buy operation.  Both were friends and colleagues with Detective Ward, who was a named defendant in the lawsuit for the September 2, 2005 case.  U/C 2570 and Cooke were also friends and colleagues with non parties Detective King, Sergeant Jones and P.O. Balsamo, all of whom worked on both the September 2, 2005 arrest and on the January 25, 2006 transaction, among others.  See P.'s 56.1 ¶'s 1, 6, 73.

No investigation of "Mr. Hood" was conducted by Cooke or U/C 2570 even though they had his name and phone number.

U/C 2570's alleged recognition of the person on November 30, 2006 as Hood and Cooke's alleged recognition of the person as plaintiff on November 30, 2006 are undermined by the evidence and are so incredible as to be unworthy of belief.

Therefore, the only credible motive to identify plaintiff as the drug seller on January 25, 2006 and initiate and maintain a prosecution against plaintiff is to retaliate against plaintiff for the lawsuit that stemmed from the dismissal of the September 2, 2005 case, and to bolster the defendants' arrest numbers to obtain promotions and to solve the problem of Hood being a lost subject.  See Cooke Dep., "Exhibit C" to the Baker Decl., p. 55:23-p. 57:4, P.'s 56.1, ¶ 's 1, 4, 6, 7-10, 13, 16, 23, 30, 32, 38, 40, 41, 44, 45, 46, 55, 66-74, Amended Complaint, "Exhibit B" to the Haber Decl., U/C Dep., p. 5:4-P. 6: 17.

To accomplish this, the defendants manufactured the events of November 30, 2006 wherein U/C 2570 claimed to have run into and recognized Mr. Hood as the person he had bought drugs from ten months earlier on January 25, 2006.  In order to bolster U/C 2570's recognition of the person as Mr. Hood, Detective Cooke falsely and fraudulently claimed that he was able to see that the person U/C 2570 and Bozeman were interacting with on November 30, 2006 and was able to recognize him as plaintiff.  Furthermore, that he was able to make this recognition while sitting in the back seat of a police surveillance vehicle a block away, without the use of any optical aid and despite the fact that the incident was brief, and he had interacted with numerous individuals who fit both Mr. Hood's description and plaintiff and despite never having arrested plaintiff and never before matching plaintiff's face to plaintiff's name.  See P.'s 56.1, ¶'s 16-22.

The defendants also manufactured the identifications of plaintiff by U/C 2570 on December 5, 2006, February 27, and April 25 and 26 2007.  See P.'s 56.1¶'s 13, 16, 17, 19-23, 30-33, 38, 40, 41.

Plaintiff did not participate in the drug conspiracy.  See P.'s 56.1, ¶ 4.  defendants induced/coerced a confidential informant to provide false and fraudulent information about plaintiff to Ms. Rios, the KCDA and the grand jury.  See Amended complaint, "Exhibit C" to the Haber Decl., P.'s 56.1 ¶'s 19, 44, 46, 49-51, 59

## Indictment 10116/07

Based on the false and fraudulent testimony of U/C 2570 and Cooke regarding the January 25, 2006 sale, the subsequent fraudulent identifications of plaintiff by U/C 2570 and Cooke and the fraudulent testimony of the CI that was coerced or induced by Cooke, plaintiff was indicted for Criminal Sale of a Controlled Substance in the Third Degree, a class "B" felony and Conspiracy in the First Degree, a class "A-1" felony under indictment No. 10116/07.  See Def.'s 56.1 ¶ 57.

## Dismissal of Indictment 10116/07

ADA Gloria Rios, dismissed the conspiracy charges and later, the charges related to the sale on January 25, 2006 not because she believed she would not have a "facially sufficient case with respect to the conspiracy counts, but because plaintiff would not accept any plea, and Rios knew that the testimony of the defendants, particularly Cooke and U/C 2570, regarding the January 25, 2006 sale and subsequent identifications of plaintiff by U/C 2570 were completely incredible.  See P.'s 56.1 at ¶ 60, 61, Transcript of Proceedings held before the Hon. Mark Dwyer, Kings /county Supreme Court Judge on May 9, 2012, "Exhibit Z" to the Haber Decl.

## <u>LEGAL ARGUMENT</u>

I.     **PLAINTIFF HAS ESTABLISHED A CLAIM FOR MALICIOUS PROSECUTION.**

In order to prevail on a Section 1983 claim against a state actor for malicious prosecution, "a plaintiff must show a violation of his rights under the Fourth amendment and must establish the elements of a malicious prosecution claim under state law."  <u>Matthews and Allan v. the City of New York</u>, et al, 2012 WL 3839505. at * 14 quoting <u>Manganiello v. City of New York</u>, 612 F.3d 149, 160-61 (2d Cir.2010).

To establish a malicious prosecution claim under New York law, "a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." <u>Id.</u> at 161.  Noteworthy is that probable cause for malicious prosecution purposes, in contrast to unlawful arrest, "consists of such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty" beyond a reasonable doubt. <u>Colon v. City of New York</u>, 60 N.Y.2d 78, 82 (1983).  A malicious prosecution claim under 42 USC §1983 requires one additional element: that defendants' conduct resulted in a "constitutionally cognizable deprivation of liberty." <u>Bullard v. City of New York</u>, 240 F.Supp.2d 292,297 (SDNY 2003); <u>see</u>, <u>e.g.</u>, <u>Murphy v. Lynn</u>, 118 F3d 938, 946 (2d Cir. 1997).

In considering a motion for judgment as a matter of law, a district court "must draw all inferences in favor of the non-moving party, and it may not make credibility determinations or weigh the evidence… .  Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge… Thus, although the court should review the record as whole, it must disregard all evidence favorable to

14

the non-moving party that the jury is not required to believe.  Manganiello v. City of New York,

612 F.3d 149 (2d Cir. 2010) quoting Zellner v. Summerlin, 494 F.3d 344, 370 (2d Cir. 2007)

(quoting Reeves v. Sanderson Plumbing, 530 U.S. 133, 150-51, 120 S.Ct. 2097, 147 L.Ed.2d 105

(2000)).

     In the context of a malicious prosecution claim, the element of malice consists of a

"wrong or improper motive, something other than a desire to see the ends of justice served." Id.,

quoting Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996).  The absence of

probable cause raises an inference of malice sufficient for a claim of malicious prosecution to

withstand summary judgment. Id., quoting Ricciuti v. New York City Transit Authority, 124

F.3d 123, 131 (2d Cir. 1997).

### A.  Defendants U/C2570 And Cooke Initiated The Prosecution.

     Under New York law, police officers can "initiate" a prosecution by filing charges or

other accusatory instruments. Cameron v. City of New York, 598 F.3d 50 (2d Cir. 2010). A

defendant other than a public prosecutor may be liable for supplying false information to the

prosecutor in substantial furtherance of a criminal action, Torres v. Jones, 26 N.Y.3d 742 (2016)

or suppressing evidence, Colon v. City of New York, 60 NY2d 78 (1983); Ramos v. City of

New York, 285 AD2d 284 (1st Dept., 2001).

     In Cameron, the Second Circuit concluded as a matter of law that defendant's filing of

the Criminal Court Complaint "initiated" the prosecution against the plaintiff.  Here, defendant

Cooke filed the criminal complaint against plaintiff and, as such, initiated the prosecution.

     Defendants Detective Cooke and U/C 2570 misrepresented to prosecutors the true

circumstances leading to plaintiff's arrest and thus induced the prosecutor to commence

proceedings based on manufactured evidence and further induced the prosecutor to continue the

proceedings by providing false documents, and information.  U/C 2570 was instrumental in bringing about the criminal charges because he falsely and fraudulently connected plaintiff to the January 25, 2006 sale of cocaine by falsely identifying him as the perpetrator on December 5, 2006, February 27, April 25 and April 26, 2007.  Cooke was instrumental in bringing about the charges by helping the DA draft the complaint, signing it and managing and paying the CI.

Among other items of false evidence that the defendants manufactured in this case were U/C 2570's January 25, 2006, and November 30, 2006 buy report, Cooke's November 30, 2006 DD5, the December 5, 2006 photo array, information and documents regarding the alleged identifications of plaintiff on February 27, April 25 and 26 2007, memo book entries used to establish a time line, stop and frisk report, and expense reports all of which was forwarded to the prosecutor and used as a guide in drafting the criminal court complaint, and the grand jury presentation

Furthermore, both Cooke and U/C 2570 gave testimony before the grand jury regarding the events on January 25, 2006, November 30, 2006, December 5, 2006, February 27, April 25 and 26 2007 that was false and/or contained material omissions.  Defendants also purposely failed to disclose to the KCDA that defendants and their friends and colleagues in the BNND had arrested plaintiff on September 2, 2005 and that the case was dismissed and that plaintiff won a settlement against the City of New York in a suit naming their friend and colleague Detective Christopher Ward and other then-unidentified individuals who turned out to be U/C 2570, Detective Cooke, and their friends and colleagues non-parties Sergeant Jones, Detective Mechelle King and Officer Balsamo.  Additionally, defendants coerced and/or induced a CI to provide false and fraudulent information regarding plaintiff's involvement in the conspiracy. Mejia v. City of New York, 119 F.Supp.2d 232 (EDNY 2000), quoting from Ricciuti v. New

York City Transit Authority, 124 F.3d at 130 ("initiation of prosecution may include preparing false evidence, forwarding it to prosecutors, suborning perjury and committing perjury").

### B. The District Attorneys' Decision To Prosecute Plaintiff Is Not A Superseding Cause.

Nor can defendants shield themselves from liability by attempting to pass responsibility for the prosecution and causation to the prosecutor to whom they presented false evidence.

A prosecutor's exercise of independent judgment cannot be a superseding cause where, as in this case, the prosecutor was constrained by the police officers' fabricated and false evidence against Mr. Goodloe. Cameron, supra; Myers v. County of Orange, 157 F.3d 66, 73-74 (2d Cir. 1998) (a prosecutor's exercise of independent judgment was not a superseding cause where the prosecutor was constrained by the police department's failure to investigate certain claims); Bermudez v. City of New York, 790 F.2d 368, 376-77 (2d Cir. 2015).

Here, a jury reasonably can conclude that defendants presented fabricated evidence to the District Attorney. Unlike in Bermudez, where the Court found that the ADA could not have been misled because he participated in the investigation and personally interviewed all the witnesses, in this case the ADAs were purposefully misled.

### C. The Proceeding Terminated in Plaintiff's Favor.

The Proceeding was terminated in plaintiff's favor, when ADA Rios dismissed the conspiracy counts and thereafter, on May 12, 2012, the remaining charges related to the alleged sale of cocaine on January 25, 2006.

### D. Defendants Lacked Probable Cause For Commencing the Proceeding.

The defendants assert that the returning of an indictment by the grand jury in the underlying criminal case created a presumption of probable cause which would defeat plaintiff's

malicious prosecution claim.  The rule in the Second Circuit, however, is that the presumption may be overcome by evidence establishing that the police witnesses have not made a complete and full statement of fact either to the Grand Jury or to the District attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith.  Manganiello v. City Of New York, 612 F.3d 149, 160-61 (2d Cir.2010), Savino v. City of New York, 331 F.3d 63, 73 (2d Cir. 2003).

Where the defendant is a police officer, the plaintiff's avenue for rebuttal is not limited to proof of misconduct in the grand jury alone.  Rather, the plaintiff may show that the officers misrepresented the facts to the District Attorney or otherwise acted in bad faith in a way that led to the indictment. Id.; Rothstein v. Carriere, 373 F.3d 275, 282-83 (2d Cir.2004) quoting Colon v. City of New York, 60 N.Y.2d 78, 82-83, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (N.Y. 1983).

Where officers fabricate evidence, there is sufficient evidence of a lack of probable cause to support a malicious prosecution finding.  Manganiello v. Agostini, 2008 WL 5159776, at *6, citing Richardson v. City of New York, No. 02 Civ. 3651, 2006 WL 2792768, at *5 (EDNY Sept. 27, 2006).

The alleged fabrication by the police "must be both material, e.g. 'likely to influence a jury's decision,' and 'the legally cognizable cause of the post arraignment deprivation of liberty." Matthews and Allan v. The City of New York, 2012 WL 3839505 (EDNY 2012) quoting Richardson v. City of New York, No. 02 CV 3651, 2006 WL 2792768, at *7 7 n. 4 (EDNY Sept. 27, 2006).

Here, a jury could reasonably conclude that defendants (1) commenced a prosecution against plaintiff using an intentionally fraudulent identification procedure, (2) provided false information to the Grand Jury to justify the seizure of plaintiff and plaintiff's involvement in a

drug sale and a drug conspiracy; and (3) worked together to procure a fraudulent Criminal Court complaint, and (4) testified falsely at the grand jury to procure an indictment.

"In order to survive a motion for summary judgment on a malicious prosecution claim, plaintiff must have submitted evidence sufficient for a reasonable jury to find that his indictment was procured as the result of police misconduct undertaken in bad faith." Sanders v. City of New York, 2015 U.S. Dist. LEXIS 42698 (citing Savino v. City of New York, 331 F.3d 63, 73 (2d Cir. 2003)).

U/C 2570's claim that on November 30, 2006, he recognized the person he saw while walking with co-conspirator Bozeman as Mr. Hood is untruthful, incredible and false.  See P.'s 56.1, ¶'16, 19.  Furthermore, U/C 2570 falsely, fraudulently and purposefully mis-identified plaintiff as being Mr. Hood on December 5, 2006, February 27, April 25 and April 26, 2007.  See P.'s 56.1 ¶'16, 19, 23, 32.  U/C 2570 offered false and fraudulent testimony at the grand jury about plaintiff.

Detective Cooke's claim that on November 30, 2006, he saw the person interacting with U/C 2570 and Bozeman and recognized the person as plaintiff from prior encounters is untruthful, incredible and false.  See P.'s 56.1, ¶'s 19, 20, 21.  Furthermore, Cooke forwarded false and fraudulent information to ADA Rios concocted by he and U/C 2570 about plaintiff, including the January 25, 2006 sale, the November 30, 2006 interaction between U/C 2570, Bozeman and the third individual, Cooke's recognition of the person as plaintiff, the December 5, 2006 photo array identification of plaintiff by U/C 2570 that he arranged and information regarding the subsequent identification procedures on February 27, April 25, and April 26, 2007.   See P.'s 56.1, ¶' 45.

This information was concocted and forwarded to the KCDA by U/C 2570 and Cooke in order to influence the grand jury's and potentially, a petit jury's decision about plaintiff.

19

Where there is some indication in the police records that, as to a fact crucial to the existence of probable cause, the arresting officers may have lied in order to secure an indictment, and a jury could reasonably find that the indictment was secured through bad faith or perjury, the presumption of probable cause created by the indictment may be overcome." Sanders v. City of New York, 2015 U.S. Dist. LEXIS, citing, Manganiello v. City Of New York, 612 F.3d at 162 (citing Boyd v. City of New York, 336 F.3d 72, 77 (2d Cir. 2003))

When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors …, the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." Ricciuti v. New York City Transit Authority, 124 F.3d at 130 (reversing grant of summary judgment on Section 1983 malicious prosecution claim where "a jury could find that [defendant] played a role in initiating the prosecution by preparing the alleged false confession as lawful grounds for probable cause."); Cf. Niemann v. Whalen, 911 F.Supp. 656, 668-69 (SDNY 1996) (finding that "the issue of whether [defendants] coerced plaintiff's confession is material to resolving the issue of probable cause for plaintiff's arrest), aff'd. 107 F.3d 3 (2d Cir. 1997).

In the instant case, plaintiff alleges that the individual defendants manufactured identifications of plaintiff by U/C 2570 then knowingly used the false identifications to initiate and maintain the prosecution of plaintiff, clearly violating his rights.  Because the Individual defendants could not reasonably rely on a known fraudulent identification to initiate and maintain a prosecution, they lacked probable cause to prosecute.  See Matthews and Allan v. City of New York, 2012 WL 3839505 (EDNY 2012)  (Because the Individual defendants could not reasonably rely on a known coerced confession to initiate and maintain a prosecution, they lacked probable cause to prosecute); see also Richardson v. City of New York, 2006 WL

20

2792768, at *5-7 (EDNY September 2006) (denying summary judgment where "jury could reasonably infer that [one officer] fabricated the evidence that [plaintiff] was in possession of the pre-recorded buy money," and "that as a result [plaintiff] was indicted and prosecuted").

A jury can reasonably conclude that law-enforcement officers fabricated material evidence against a suspect and forwarded it to prosecutors, causing the suspect to be deprived of his liberty, then not only is the presumption of probable cause overcome, but the existence of probable cause based on non-fabricated evidence ceases to be a defense for the fabricator. Richardson v. The City of New York, 2006 U.S. Dist. LEXIS 69577.

Thus, even if a CI came forward after November 30, 2006 and provided some information that plaintiff had participated in the conspiracy, this cannot be used as a defense to plaintiff's malicious prosecution claim against U/C 2570 and Cooke for fabricating the January 25, 2006 sale and subsequent purposeful mis-identifications of plaintiff.

Furthermore, a failure to inquire further into reasonable leads, when a reasonable person would have done so, evidences a lack of probable cause. Id., citing Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996) (citing Colon, 60 N.Y.2d at 82, 468 N.Y.S. 2d 453 455 N.E. 2d 1248). In the instant case, U/C 2570 and Detective Cooke failed to inquire further into the name of Mr. Hood and Mr. Hood's telephone number, even though they did so for other suspects in the conspiracy. See P.'s 56.1 ¶ 17 (i), (j) and (k).

Taking plaintiff's version of the facts as true, a jury could reasonably infer that U/C 2570 knowingly misidentified him and that U/C 2570 and Cooke fabricated the November 30, 2006, December 5, 2006, February and April 2007 identifications of plaintiff as being JD Hood. Furthermore, given the relationship between the officers involved in the September 2, 2005 arrest and prosecution of plaintiff and the officers involved in the subsequent prosecution of

plaintiff in the Lightning Strikes Twice investigation, a reasonable jury could infer that U/C 2570 and Detective Cooke set up plaintiff,  falsely identified him and falsely accused him of being JD Hood in retaliation for the dismissal of the September 2, 2005 case and the award of compensation to plaintiff.

Defendants cite to the thoroughly distinguishable Hewitt v. City of New York, 09 CV 0214 (RJD), 2012 U.S. Dist. LEXIS 141067 (EDNY Sept. 27, 2012), aff'd, 544 Fed. Appx. 24 (2d Cir. 2013).  Judge Dearie, in granting summary judgment to defendants, concluded that that plaintiff failed to show anything more than possible misidentification.  Here, there was purposeful fabrication of evidence in retaliation for plaintiff's successful lawsuit, not misidentification or reasonable mistake as in Hewitt.  The identification in Hewitt occurred five months after multiple encounters with the Hewitt plaintiff.  Here, the claimed identification occurred ten months after a single purported encounter and under circumstances calling into question defendants' veracity.  Here, there was absolutely no meaningful follow up investigation of Mr. Hood's name or his phone number, even though such investigative techniques were used to investigate other co-conspirators, whereas in Hewitt, the Court noted that Cooke and other officers did take concrete steps to investigate who JD Altima might be before the confirmatory photo array.  Moreover, unlike in Mr. Goodloe's case, the Hewitt plaintiff could point to "no evidence of ill will or malice …, no arguable motivation to fabricate, or any other coherent theory for why [the involved officers] would lie …." Hewitt, slip op at p.11.  Here, defendants were involved in an earlier prosecution of plaintiff that was dismissed and for which plaintiff successfully sued the City of New York and non-party Detective Ward and other, unidentified officers who, as it turns out, are defendants U/C 2570, Cooke and non-parties Detective King,

Sergeant Jones and Officer Balsamo, all of whom also worked in both investigations and on both buy operations.

### E.  **Actual Malice as a Motivation for Defendant's Actions.**

Malice may be shown by proving that the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff. Manganiello v. Agostini, 2008 WL 5159776, at *7, (SDNY Dec. 9, 2008) (citing Pinsky v. Duncan, 79 F.3d 306, 313 (2d Cir. 1996)) (quotation marks and citation omitted).  Moreover, "[m]alice may be inferred from the lack of probable cause," Id.

Defendants acted out of malice as retaliation for the dismissal of plaintiff's charges from the September 2, 2005 case and going on to successfully sue Detective Ward and other police officers who, although unnamed at that time, are now known to be Defendants Cooke and U/C and non parties Detective Mechelle King, Sergeant Jones and P.O. Balsamo.

Defendant U/C 2570 and Cooke's denial of knowledge that plaintiff's September 2, 2005 case was dismissed and that plaintiff filed a subsequent lawsuit is as incredible and unbelievable as their claims that they recognized the person interacting with Bozeman and U/C 2570 on November 30, 2006.  See generally P.'s 56.1 statement.

In any event, given the circumstances of the "recognition" of plaintiff by U/C 2570 and Cooke on November 30, 2006 and the subsequent identifications, a reasonable jury could infer that the prosecution of plaintiff was undertaken in reckless disregard to the rights of plaintiff. Manganiello v. Agostini, 2008 WL 5159776.

Furthermore, given the relationships between and among Cooke, U/C 2570, Ward, King, Balsamo and Jones, and given that they were all involved with both the September 2, 2005 arrest and the prosecution of plaintiff for the January 25 2006 sale and the conspiracy case against

23

plaintiff, Cooke and U/C 2570's claims that they were unaware that plaintiff had filed a law suit

and won a judgment against Ward and NYC for his false arrest on September 2, 2005 are

completely incredible.

The failure of individual defendants to disclose to the prosecutor the fact that plaintiff had

been previously arrested by the BNND and had won a judgment against the NYPD and officers

of the BNND for false arrest based on a similar allegation was an act of bad faith which would

rebut the presumption of probable cause.

Furthermore, a reasonable jury could infer that NYPD's policy of promoting its undercover

investigators based on the number of buys they made and the number of arrests they generated

created an improper incentive for U/C 2570 Cooke and others to falsely charge plaintiff.   P.'s 56.1,

¶ 4.

### F.  Independent Evidence Corroborating That Plaintiff Did Not Sell Drugs Is Not Required.

Plaintiff does not need independent evidence corroborating his claim that he did not sell

drugs to U/C2570 in order to survive a motion to dismiss.  Plaintiff's sworn testimony, his claims

appearing in the complaint, and the record before the Court, are sufficient.  Plaintiff's testimony

itself is admissible evidence, and at the summary judgment stage, the testimony has to be

credited.  Richardson v. The City of New York, 2006 WL 2792768, at *10 (EDNY Sept. 27,

2006).

### G.  Defense Reliance on Confidential Informant

Defense is using its asserted law enforcement/informer's privilege as both a shield and a

sword.  This Court should find waiver of the privilege and allow plaintiff access to the shielded

information under a Protective Order during which consideration of this motion should be

stayed.  Alternatively, the Court should preclude defense from using any of the shielded information in support of their motion.

Waiver of the privilege is appropriate.  "[A]s a general matter, a party cannot use materials as a sword in its defense while using privileges attaching to materials relied upon for that defense as a shield."  Dinler v. City of New York  ("In re The City of New York"), 607 F.3d 923, 946-947 (2nd Cir. 2010) (citation and quotation marks omitted).   As noted in Obeid v LaMack, 14 cv. 6498 (LTS)(MHD), 2015 WL 5581577 at *10 (SDNY Sept. 16, 2015), waiver is justified when the party asserting the privilege

> releases information, otherwise privileged, that is favorable to its position in the lawsuit while withholding privileged information that is adverse to its position (that is, using the privilege as 'a sword and a shield') or when it asserts a position that implicitly puts into issue the substance of privileged information, absent which the claim or assertion cannot properly be assessed.

See also In re County of Erie, 546 F.3d 222, 229 (2d Cir.2008); Freedman v. Weatherford, 2014 WL 3767034, *3 (SDNY July 25, 2014); Koumoulis v. Independent Financial Marketing Group, Inc. Eyeglasses, 295 F.R.D. 28 (EDNY 2013) (Finding waiver of privilege where defendants put protected documents at issue); Chevron Corp. v. Donziger, 11 Cv. 0691 (LAK) (JCF), 2013 WL 4045326, at *4 (SDNY Aug. 9, 2013) (ordering disclosure of privileged documents; the "sword-shield doctrine . . . prohibits a litigant from using [a privilege[ as a sword and a shield by selectively using privileged documents to prove a point but then invoking privilege to prevent an opponent from challenging the assertion") (quotations and citations omitted).

Here, defendants expressly and ubiquitously rely on privileged information shielded from disclosure and to which plaintiff has no access.  See, e.g., Defendants' Memorandum of Law, DE 59, at pp. 6, 7, 12-14, 17, 22, 23, and 24; Defendants' Rule 56.1 Statement, DE 58, ¶¶ 44, 45, 49, 50, 51; Defendants' Exhibit G, DE57-7, Deposition Transcript of Christopher Cooke at 12:13-18,

155:18-156:17, 157:5-10, 180:8-181:4; Exh. K, DE57-11, Deposition Transcript of Gloria Rios
at 17, 67:22-68:17, 70:9-14, 71:24-79:21, 83:21-84:25.

The inability to develop information about defendants' misuse of the CI and the resulting
false and fabricated evidence prejudices plaintiff's ability to effectively present his claims.
Magistrate Scanlon's decision allowing defendants' assertion of the informer's privilege
recognizes plaintiff's compelling need for the requested information. Goodloe v. City of New
York, 136 F.Supp.3d 283, 299-301 (EDNY 2015); cf. Creighton v. City of New York, 12 Civ.
7454 (PGG), 2015 WL 8492754 (SDNY Dec. 9, 2015)(Civil rights action alleging arrest,
prosecution, and fabrication of evidence claims; ordering disclosure under a Protective Order of
information regarding confidential informant); Carbajal v. County of Nassau, 02 cv. 4270, 2003
WL 23138447, at *2 (EDNY Dec. 22, 2003) ("The need for disclosure has been held to be the
strongest when the informant was 'a key witness or participant' in the alleged crime."); see also
United States v. Saa, 859 F.2d 1067, 1073 (2nd Cir. 1988); People v. Goggins, 34 N.Y.2d 163,
169-70 (NY 1974).

If this Court is disinclined to find waiver and allow disclosure under a Protective Order,
plaintiff alternatively requests that this Court excise from the record all reference to the
confidential informant.  The Court in Laxalt v. McClatchy, 116 F.R.D. 438, 452-453 (D. Nev.
1987) (citations omitted), cited by Magistrate Scanlon in her decision allowing defendants'
assertion of the privilege despite plaintiff's compelling need for the requested information, noted
that

> [i]f the defendants were allowed to base their defense in this case,
> as they have done, on the reliability of their sources, and yet still
> be allowed to refuse to disclose what those sources are, the jury
> would be left without the crucial information it requires to make its
> decision. … Therefore, if the defendants choose to rely upon the
> privilege … they may do so, but they must do so absolutely.

Goodloe v. City of New York, 136 F.Supp.3d at 304 fn. 2 (EDNY 2015); see also Mazzella v. Phila. Newspapers, Inc., 479 F.Supp. 523, 529 n. 3 (EDNY1979); cf. In re The City of New York, 607 F.3d 923 (2nd Cir. 2010) (In civil rights action stemming from 2004 Republican National Convention, civil defendant City had expressly disavowed use in its defense of materials shielded by the law enforcement privilege; Circuit reviewed on mandamus the privilege ruling and vacated the District Court's Order disclosing privileged field reports generated during the RNC); In re Sims, 534 F.3d 117, 132, 134-135 (2nd Cir. 2008)(In prisoner civil rights action alleging excessive force, District Court found waiver of psychotherapist-patient privilege despite that plaintiff expressly withdrew claims for emotional injury damages beyond "garden variety" claims and disavowed reliance on privileged communications and documents; Circuit reviewed on mandamus the privilege ruling and vacated the District Court's finding of waiver).

## II.  DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

Defendants claim qualified immunity from the malicious prosecution claim.  Just as "a coerced confession could not constitutionally be used against a defendant in a criminal case," Matthews and Allan v. The City of New York, 2012 WL 3839505 (EDNY 2012) (quoting Higazy v. Templeton, 505 F.3d 161 at 173,  "qualified immunity is unavailable where the action violates an accused's clearly established constitutional rights, and no reasonably competent police officer could believe otherwise," Matthews, quoting Ricciuti, 124 F.3d at 130 (denying qualified immunity where defendants forwarded a known false confession to prosecutors).

Defendants U/C 2570's and Cooke's motion for qualified immunity should be denied, as the facts and circumstances regarding the objective reasonableness of their actions is in genuine dispute.  U/C 2570 claims he was able to recognize a person on November 30, 2006 as Mr.

Hood.  Cooke claims he was able to recognize that the person U/C 2570 identified as Mr. Hood, was plaintiff.  The December 5, 2006 photo array and the February 27, 2007 show up identifications were arranged and conducted by Cooke.  U/C 2570 identified plaintiff on December 5, 2006, February 27, 2007, April 25 and 26, 2007.  There is evidence in the record from which a reasonable jury could infer that the recognitions by U/C 2570 and Cooke on November 30, 2006 and all subsequent identification procedures and the results there from were fabricated by U/C 2570 and Cooke.  See P.'s 56.1 ¶'s 16, 17, 19, 23, 30- 32, 40, 41.

There is no basis for invoking qualified immunity.  On the record before this Court, the issue of qualified immunity boils down to whether a reasonable officer could have reasonably believed U/C 2570 and Cooke in the light of applicable law that it was permissible to arrest, imprison, and prosecute on serious drug conspiracy charges based on fabricated evidence.

The qualified immunity defense insulates police officers such as defendants U/C 2570 and Cooke from civil liability as long as their official conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, ... insofar as it was objectively reasonable for such officials to believe, even if mistakenly, that their conduct did not violate such rights."  Richards v. City of New York, 433 F.Supp.2d 404, 419 (SDNY 2006) (citation and internal quotation marks omitted); Anderson v. Creighton, 483 U.S. 635, 641 (1987) (The availability of the defense depends on whether a "reasonable officer could have believed" his action "to be lawful, in light of clearly established law and the information he possessed.").  A police officer who has an objectively reasonable belief that his actions are lawful is entitled to qualified immunity.  Okin v. Village of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 433 (2d Cir. 2009).

Here, the record shows that the officer's conduct violated plaintiff's clearly established right against fabrication of evidence and unlawful prosecution.  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  Saucier v. Katz, 533 U.S. 194, 201, 121 SCt 2151, 150 L.Ed2d 272 (2001), overruled in part on other grounds, Pearson v. Callahan, 555 U.S. 223, 129 SCt. 808, 172 L.E.2d 565 (2009).

Factual disputes prevent entry of summary judgment on qualified immunity.  See, e.g., Toliver v. City of New York, 10 CV 5803, 2012 WL 6013098 at *8 (SDNY December 3, 2012) (qualified immunity inappropriate because if plaintiff's allegations are true, the officer is not entitled to immunity); Michele v. City of New York, 09 CV 9334, 2013 WL 4354763 at * 18 (SDNY September 12, 2012) (credibility determinations are for the jury); Russo v. DiMilia, 894 F.Supp.2d 391, 414-15 (SDNY 2012) (factual disputes overlap the substantive claim and the qualified immunity defense, preventing summary judgment).  This branch of defendants U/C 2570's and Cooke's motion should be denied and the issue of the lawfulness of the prosecution should be submitted to the jury.

Accordingly, based on the facts alleged above, defendants in the instant case are not entitled to qualified immunity because no reasonable officer could believe that utilizing a fraudulent identification is constitutional.

29

## <u>Conclusion</u>

Plaintiff Carl Goodloe has produced enough evidence to overcome summary judgment on his malicious prosecution claim and thus, defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure must be denied.

Dated: Brooklyn, New York
        October 3, 2016

 

Harold C. Baker, Esq.
 *Attorney for Plaintiff*
32 Court Street, Suite 507
Brooklyn, NY 11201
718-858-7027
           **/S/**
_____